**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| CGS INDUSTRIES, INC., a Florida corporation, | ) | CASE NO.:  CV10-3186 JBW (JO) |
| | ) | |
| Plaintiff, | ) | Hon. Jack B. Weinstein |
| | ) | |
| vs. | ) | **PLAINTIFF'S MEMORANDUM OF** |
| | ) | **LAW IN SUPPORT OF MOTION** |
| THE CHARTER OAK FIRE INSURANCE | ) | **FOR SUMMARY JUDGMENT AS** |
| COMPANY, a Connecticut corporation, | ) | **TO LIABILITY ON DEFENDANT'S** |
| | ) | **DUTY TO DEFEND** |
| Defendant. | ) | |
| | ) | |
| | ) | |
| | ) | |

# TABLE OF CONTENTS

Page

I.    SUMMARY OF ARGUMENT .................................................................. 1

II.    MATERIAL FACTS OF THE CASE ..................................................... 2

     A.    The Parties, Diversity Jurisdiction and Venue.................................. 2

     B.    The Charter Oak Policy ................................................................. 3

     C.    The *Five Four* Action Alleges Facts Implicating CGSI's Infringement of Both "Title" and "Slogan" "In the Course of Advertising" by Infringing the Five Four Design ............................................................ 3

     D.    Charter Oak's Denial of CGSI's Request for Defense ...................... 3

III.    GOVERNING RULES TRIGGER DUTY TO DEFEND ........................... 4

     A.    New York Substantive Insurance Law Governs This Dispute ......... 4

     B.    Charter Oak's Duty to Defend Arises from the Mere Potential for Coverage ....................................................................................... 4

     C.    The Facts Alleged in the *Five Four* Complaint, Not Its Pleading Labels or Names of Claims, Trigger the Duty to Defend ................... 5

     D.    Charter Oak's Policy's "Advertising Injury" Test Applied Here.................... 5

     E.    Infringement During the Charter Oak Policy Term Is Alleged ...................... 6

IV.    FACTS ESTABLISH POTENTIAL COVERAGE UNDER THE "INFRINGEMENT OF TITLE" OFFENSE ............................................ 6

     A.    Facts Potentially Trigger the Offense and the Duty to Defend.................... 6

     B.    A "Suit" Has Been Brought ........................................................... 7

     C.    Five Four Is an "Organization".................................................... 8

     D.    CGSI's Alleged Acts Include "Infringement of 'Title'" Owned by Five Four ............................................................................................. 8

     E.    The "Infringement" Is Alleged to Have Occurred "In the Course of Advertising" CGSI's Goods ........................................................... 13

         1.    "Advertising" Is Pled ........................................................... 13

         2.    "In the Course of" Is Pled ..................................................... 15

V.    FACTS ESTABLISH POTENTIAL COVERAGE UNDER "INFRINGEMENT OF SLOGAN" OFFENSE......................................... 17

    A.    **Facts Potentially Trigger the Offense and the Duty to Defend**...................... 17

    B.    **The *Five Four* Complaint Alleges "Infringement of Slogan"** .......................... 17

    C.    **The Second Circuit's *Hugo Boss* Opinion, Which Predates *Ultra Coachbuilders* and *Zen Design*, Is Readily Distinguishable** .......................... 20

**VI.    NO POLICY EXCLUSION BARS A DEFENSE** ....................................................... 23

    A.    **The Exclusions Cited by Charter Oak When Denying a Defense Do Not "Unavoidably Bar" a Defense As New York Law Requires** ................... 23

    B.    **None of the Exclusions Cited in Charter Oak's Denial Letter Bar a Defense** ............................................................................................................. 24

        1.    **The *Five Four* Complaint Does Not Allege Facts that Inevitably Bring Its Claims Within the "First Publication" Exclusion** ............................................................................................ 24

        2.    **The *Five Four* Complaint Does Not Allege Facts that Inevitably Bring Its Claims Within the "Knowing Violation" and "Knowledge of Falsity" Exclusions** ................................. 26

        3.    **The *Five Four* Complaint Does Not Allege Facts that Inevitably Bring Its Claims Within the "Unauthorized Use of Another's Name or Product" Exclusion** ............................. 27

        4.    **The *Five Four* Complaint Does Not Allege Facts that Bring Its Claims Within the "Criminal Acts" Exclusion** .................................... 28

**VII.    CONCLUSION** ........................................................................................................ 29

# TABLE OF AUTHORITIES

**Page(s)**

FEDERAL CASES

*A Touch of Class Imports, Ltd. v. Aetna Cas. & Sur. Co.*,
    901 F. Supp. 175 (S.D.N.Y. 1995).......................................................................12, 19

*Adolfo House Distrib. Corp. v. Travelers Prop. & Cas. Ins. Co.*,
    165 F. Supp. 2d 1332 (S.D. Fla. 2001) ...................................................................26

*American Econ. Ins. Co. v. Reboans, Inc.*,
    900 F. Supp. 1246 (N.D. Cal. 1994) .......................................................................10

*American Employers' Ins. Co. v. DeLorme Publ'g Co., Inc.*,
    39 F. Supp. 2d 64 (D. Me. 1999) .............................................................................10

*Blau Plumbing, Inc. v. S.O.S. Fix-It, Inc.*,
    781 F.2d 604 (7th Cir. (Wis.) 1986) .......................................................................20

*Century 21, Inc. v. Diamond State Ins. Co.*,
    442 F.3d 79 (2d Cir. (N.Y.) 2006) ....................................................................13, 14

*Charter Oak Fire Ins. Co. v. Hedeen & Cos.*,
    280 F.3d 730 (7th Cir. (Wis.) 2002) .......................................................................11

*Cincinnati Ins. Co. v. Zen Design Group, Ltd.*,
    329 F.3d 546 (6th Cir. (Mich.) 2003) ...............................................................18, 21

*City of Johnstown, N.Y. v. Bankers Standard Ins. Co.*,
    877 F.2d 1146 (2d Cir. (N.Y.) 1989) ........................................................................4

*Cooper Indus., Inc. v. Aviall Servs., Inc.*,
    543 U.S. 157, 125 S. Ct. 577 (2004)........................................................................22

*Ecology Works, Inc. v. Essex Ins. Co.*,
    58 Fed. Appx. 714 (9th Cir. (Cal.) 2003)...........................................................24, 25

*Elcom Techs., Inc. v. Hartford Ins. Co. of the Midwest*,
    991 F. Supp. 1294 (D. Utah 1997).........................................................................26

*Ethicon, Inc. v. Aetna Cas. & Sur. Co.*,
    737 F. Supp. 1320 (S.D.N.Y. 1990).......................................................................29

*First Investors Corp. v. Liberty Mut. Ins. Co.*,
    152 F.3d 162 (2d Cir. (N.Y.) 1998) ..........................................................................8

*General Star Nat'l Ins. Co. v. Universal Fabricators, Inc.*,
    585 F.3d 662 (2d Cir. (N.Y.) 2009) ..........................................................................4

*Hugo Boss Fashions, Inc. v. Federal Ins. Co.*,
    252 F.3d 608 (2d Cir. (N.Y.) 2001) ............................................................20, 21, 22

*J.A. Brundage Plumbing & Roto-Rooter, Inc. v. Massachusetts Bay Ins. Co.*,
   818 F. Supp. 553 (W.D.N.Y. 1993), *vacated by reason of settlement*, 153 F.R.D. 36
   (W.D.N.Y. 1994) ..................................................................................................1, 11, 16

*Johnson & Johnson v. Carter-Wallace, Inc.*,
   631 F.2d 186 (2d Cir. (N.Y.) 1980) ........................................................................26

*Lefrak Org., Inc. v. Chubb Custom Ins. Co.*,
   942 F. Supp. 949 (S.D.N.Y. 1996)..............................................................................9

*Ohio Cas. Ins. Co. v. Cloud Nine, LLC*,
   464 F. Supp. 2d 1161 (D. Utah 2006)......................................................................28

*Poof Toy Prods., Inc. v. United States Fid. & Guar. Co.*,
   891 F. Supp. 1228 (E.D. Mich. 1995)......................................................................29

*Sentex Sys., Inc. v. Hartford Acc. & Indem. Co.*,
   882 F. Supp. 930 (C.D. Cal. 1995) ....................................................................11, 15

*Simply Fresh Fruit, Inc. v. Continental Ins. Co.*,
   84 F.3d 1105 (9th Cir. (Cal.) 1996) ........................................................................11

*Village of Sylvan Beach, N.Y. v. Travelers Indem. Co.*,
   55 F.3d 114 (2d Cir. (N.Y.) 1995) ............................................................................5

## State Cases

*Acuity v. Bagadia*,
   750 N.W.2d 817 (Wis. 2008)...............................................................1, 10, 11, 15

*Allstate Ins. Co. v. DiBartolo*,
   618 N.Y.S.2d 828 (App. Div. 1994) ...................................................................23, 29

*AMCO Ins. Co. v. Lauren-Spencer, Inc.*,
   500 F. Supp. 2d 721 (S.D. Ohio 2007) ...................................................................16

*Atlantic Mut. Ins. Co. v. J. Lamb, Inc.*,
   100 Cal. App. 4th 1017 (2002) .........................................................................5, 25

*Automobile Ins. Co. of Hartford v. Cook*,
   7 N.Y.3d 131 (N.Y. 2006) .........................................................................................4

*Bear Wolf, Inc. v. Hartford Ins. Co.*,
   819 So. 2d 818 (Fla. App. 2002)...............................................................................14

*Belt Painting Corp. v. TIG Ins. Co.*,
   100 N.Y.2d 377 (2003) ..............................................................................................23

*Berman v. General Acc. Ins. Co. of Am.*,
   671 N.Y.S.2d 619 (App. Div. 1998)....................................................................14, 28

*Carnival Brands, Inc. v. American Guar. & Liab. Ins. Co.*,
   726 So. 2d 496 (La. Ct. App. 1999)................................................................25

*Fireman's Fund Ins. Co. of Wis. v. Bradley Corp.*,
   660 N.W.2d 666 (Wis. 2003).......................................................................15

*General Cas. Co. of Wis. v. Wozniak Travel, Inc.*,
   762 N.W.2d 572 (Minn. 2009).....................................................................10

*Kirk, King, King Constr., Inc. v. Continental Western Ins. Co.*,
   123 S.W.3d 259 (Mo. Ct. App. 2003)............................................................14

*National Football League v. Vigilant Ins. Co.*,
   824 N.Y.S.2d 72 (App. Div. 2006)...........................................................23, 24

*Peerless Lighting Corp. v. American Motorists Ins. Co.*,
   82 Cal. App. 4th 995 (2000) ......................................................................16

*PG Ins. Co. of NY v. S.A. Mfg. Co., Inc.*,
   674 N.Y.S.2d 199 (App. Div. 1998)..............................................................26

*Rosen v. State Farm Gen. Ins. Co.*,
   30 Cal. 4th 1070 (2003)............................................................................22

*Safeco Ins. Co. of Am. v. Robert S.*,
   28 P.3d 889 (Cal. 2001)............................................................................28

*Seaboard Sur. Co. v. Gillette Co.*,
   476 N.E.2d 272 (N.Y. 1984)....................................................................4, 28

*Simply Lite Food Corp. v. Aetna Cas. & Sur. Co. of Am.*,
   666 N.Y.S.2d 714 (App. Div. 1997)..............................................................28

*Super Duper, Inc. v. Pennsylvania Nat'l Mut. Cas. Ins. Co.*,
   683 S.E.2d 792 (S.C. 2009) .......................................................................10

*Syvertsen v. Great Am. Ins. Co.*,
   700 N.Y.S.2d 289 (App. Div. 1999)................................................................5

*Technicon Elecs. Corp. v. American Home Assur. Co.*,
   74 N.Y.2d 66 (1989)..................................................................................4

*Town of Massena v. Healthcare Underwriters Mutual Ins. Co.*,
   98 N.Y.2d 435 (2002).............................................................................5, 22

**DOCKETED**

*American Express Co. v. Vibra Approved Lab. Corp.*,
   No. 87 CIV 8840 (CSH), 1989 WL 39679 (S.D.N.Y. Apr. 19, 1989) ...................19

*Ben Berger & Sons, Inc. v. American Motorists Ins. Co.*,
   No. 94 Civ. 3250, 1995 WL 386560 (S.D.N.Y. June 29, 1995)............................16

*Energex Sys. Corp. v. Fireman's Fund Ins. Co.*,
   No. 96 Civ. 5993 (JSM), 1997 WL 358007 (S.D.N.Y. July 24, 1997) ............................12, 16

*Finger Furniture Co. v. Travelers Indem. Co.*,
   No. H-01-2797, 2002 WL 32113755 (S.D. Tex. Aug. 19, 2002) ...........................................25

*First State Ins. Co. v. Alpha Delta Phi Fraternity*,
   No. 1-94-1050, 1995 WL 901452 (Ill. App. Ct. Nov. 3, 1995) .............................................10

*Guardian Trust Co. v. American States Ins. Co.*,
   No. 95-4073-SAC, 1996 WL 509638 (D. Kan. July 30, 1996) ..............................................25

*Hudson Ins. Co. v. Colony Ins. Co.*,
   No. EDCV 07-01497-SGL......................................................................................................21

*LensCrafters, Inc. v. Liberty Mut.l Fire Ins. Co.*,
   No. C 04-1001 SBA, 2005 WL 146896 (N.D. Cal. Jan. 20, 2005) .......................................29

*Massachusetts Bay Ins. Co. v. Penny Preville, Inc.*,
   No. 95 Civ. 4845 (RPP), 1996 WL 389266 (S.D.N.Y. July 9, 1996)....................5, 16, 26, 27

*Park Place Entertainment Corp. v. Transcontinental Ins. Co.*,
   No. 01 CV 6546(ELC), 2003 WL 1913709 (S.D.N.Y. April 18, 2003)................................27

*Ultra Coachbuilders, Inc. v. General Security Ins. Co.*,
   No. 02 CV 675(LLS), 2002 WL 31528474 (S.D.N.Y. July 15, 2002)..................2, 17, 18, 22

**FEDERAL RULES AND STATUTES**

15 U.S.C. § 1114(1) ..................................................................................................................28

28 U.S.C. § 1332(a)(1)................................................................................................................2

28 U.S.C. § 1391(a)(2)................................................................................................................3

**STATE RULES AND STATUTES**

**OTHER AUTHORITIES**

RANDOM HOUSE UNABRIDGED DICTIONARY (2d ed. 1993) ...................................................8, 9, 13

## I.    SUMMARY OF ARGUMENT

Plaintiff CGS Industries, Inc. ("CGSI") is entitled to a declaratory judgment[1] that Defendant Charter Oak Fire Insurance Company ("Charter Oak") had and has a duty to defend CGSI, its policyholder, in an underlying lawsuit captioned *Five Four Clothing, Inc., et al. v. Wal-Mart Stores, Inc., et al.,* United States District Court, Central District of California, Case No. CV 09-9431 GW (CWx) (the "*Five Four* lawsuit"). A defense is owed under the Charter Oak policy's "Personal and Advertising Injury" coverage that requires a defense when facts implicating the policy's "advertising injury" offenses of "infringement of title" or "infringement of slogan" are alleged.[2]

The *Five Four* lawsuit's Second Amended Complaint[3] ("*Five Four* Complaint"), like the subsequent and substantively consistent Third Amended Complaint ("*Five Four* TAC"),[4] alleges that CGSI infringed Five Four's abstract, distinctive trademarked design on the back pocket of Five Four's jeans by affixing a similar, infringing mark on the back pockets of CGSI's competing jeans (thereby infringing Five Four's trademark/trade dress) and displaying them to the public at Walmart stores, thereby "advertising" them.[5]

These allegations trigger the discrete covered policy offenses of "infringement of title" and "infringement of slogan" because Five Four's abstract FF Design trademark that CGSI allegedly infringed is both a "title"[6] (i.e., a "descriptive . . . designation" for the jeans and the hip

---

[1]By this motion, CGSI seeks only a judicial declaration of Charter Oak's duty to defend CGSI in the *Five Four* lawsuit and Charter Oak's breach of its duty.

[2]Declaration of Leonard M. Braun ("Braun Decl."), ¶ 4, **Exhibit "1,"** Web Xtend Liability Endorsement, pp. 1-2, 4-5 of 5 ("Advertising injury" defined as including "**Infringement of** copyright, **title or slogan, provided that claim is made or 'suit' is brought by a** person or **organization claiming ownership in such** copyright, **title or slogan**." (emphasis added)).

[3]Braun Decl., ¶ 10, **Exhibit "4."**

[4]Braun Decl., ¶ 11, **Exhibit "12.**

[5]Braun Decl., ¶ 10, **Exhibit "4," ¶¶** 3, 13, 14, 36, 40, 47; Braun Decl., ¶ 11, **Exhibit "12," ¶¶** 3, 13, 14, 33, 38, 39, 44.

[6]*J.A. Brundage Plumbing & Roto-Rooter, Inc. v. Massachusetts Bay Ins. Co.,* 818 F. Supp. 553, 559 (W.D.N.Y. 1993), *vacated by reason of settlement*, 153 F.R.D. 36 (W.D.N.Y. 1994) (defining "title" as a "distinctive appellation; the name by which anything is known");

*Acuity v. Bagadia*, 750 N.W.2d 817, 824-25 (Wis. 2008) ("title" defined as a "descriptive or

fashion attributes that Five Four alleges the symbols embody) and a "slogan"[7] (an "attention-getting device" that "promotes and advertises" and reminds consumers of the "Five Four" brand), as well as a trademark.

None of the five policy exclusions to which Charter Oak referred in its defense denial letter bars its duty to defend CGSI.  As explained in Section VI, *infra*, three of the exclusions ("First Publication," "Knowing Violation" and "Knowledge of Falsity") may bar indemnity depending on what facts are decided by the time the *Five Four* lawsuit concludes, but they do not bar a defense that must be provided so long as there is any potential for coverage.  The other two exclusions ("Unauthorized Use of Another's Name or Product," and "Criminal Acts") are inapplicable because the facts required to trigger them are not pled in the *Five Four* Complaint. The Court should find that there is a potential for coverage and that Charter Oak owes and has breached its duty to defend CGSI.

## II.    MATERIAL FACTS OF THE CASE

### A.    The Parties, Diversity Jurisdiction and Venue

CGSI is a Florida corporation with headquarters in Long Island City, New York,[8] and therefore is a citizen of Florida and New York.  Charter Oak is a Connecticut corporation with headquarters in Hartford, Connecticut, and therefore is a citizen of Connecticut.[9]  More than $75,000 is in controversy in this insurance coverage lawsuit because CGSI has already incurred more than that sum in defending itself in the *Five Four* lawsuit.[10]  This Court has diversity jurisdiction over this case.  28 U.S.C. § 1332(a)(1).

Venue is proper in this Court because CGSI purchased the policy at issue in this lawsuit

---

distinctive" appellation that encompasses six software trademarks in infringement suit).

[7] *Ultra Coachbuilders, Inc. v. General Security Ins. Co.*, No. 02 CV 675(LLS), 2002 WL 31528474, at *3 (S.D.N.Y. July 15, 2002) (J. Stanton) (defining "slogan" as including "a phrase used to promote a product mark or house mark" and "a brief attention-getting phrase used in advertising . . . .").

[8] Braun Decl., ¶ 3.

[9] CGSI's Request For Judicial Notice ('RJN") and **Exhibit "12"** thereto.

[10] Braun Decl., ¶ 12.

and made premium payments for it in and from this judicial district and Charter Oak delivered its policy to CGSI in this district.[11]  28 U.S.C. § 1391(a)(2).

### B.   The Charter Oak Policy

Charter Oak's Commercial Liability insurance policy to CGSI is effective August 31, 2009 to August 31, 2010.[12]  The Policy's commercial general liability coverage form is amended and superseded by the "Web Xtend Liability" endorsement (the "Endorsement").[13]

### C.   The *Five Four* Action Alleges Facts Implicating CGSI's Infringement of Both "Title" and "Slogan" "In the Course of Advertising" by Infringing the Five Four Design[14]

Five Four filed the *Five Four* Complaint on March 24, 2010, naming CGSI and Walmart as defendants.[15]  Relevant portions of the *Five Four* Complaint triggering the "infringement of title" and "infringement of slogan" covered offenses are cited and quoted below with respect to the offense elements.

### D.   Charter Oak's Denial of CGSI's Request for Defense

Charter Oak denied CGSI's request for a defense on April 24, 2010,[16] requiring CGSI to defend itself in the *Five Four* lawsuit.[17]  Charter Oak's denial letter briefly recited five exclusions that it contended barred a defense but failed to explain how the facts pled in the *Five Four* Complaint against CGSI triggered any of the exclusions.[18]  On August 3, 2010 CGSI

---

[11]Braun Decl., ¶¶ 5-7.

[12]Braun Decl., ¶ 4, **Exhibit "1."**

[13]Braun Decl., ¶ 4, **Exhibit "1,"** Web Xtend Liability Endorsement.

[14]This section will give an overview of the facts relating to this dispute.  In the interests of clarity and brevity, specific facts relating to each policy provision involved on this motion will be analyzed in more detail below.

[15]Braun Decl., ¶ 10, **Exhibit "4."**  Previous iterations of Five Four's complaint in this lawsuit, commenced December 23, 2009, did not name CGSI as a defendant.  Braun Decl., ¶¶ 8 & 9, **Exhibits "2" and "3."**

[16]Declaration of Bruce A. McDonald ("McDonald Decl."), ¶ 7, **Exhibit "10."**

[17]Braun Decl., ¶ 11.

[18]McDonald Decl., ¶ 7, **Exhibit "11."**

provided notice to Charter Oak of the TAC.[19]

## III.    GOVERNING RULES TRIGGER DUTY TO DEFEND

### A.    New York Substantive Insurance Law Governs This Dispute

The Charter Oak policy has no choice of law provision.  The substantive law of New York governs this dispute.[20]

### B.    Charter Oak's Duty to Defend Arises from the Mere Potential for Coverage

Under New York law a carrier's duty to defend is "exceedingly broad."[21]  A defense is required "whenever the allegations of the complaint 'suggest ... a **reasonable possibility** of coverage' . . . 'no matter how groundless, false or baseless the suit may be.' "  *Id.* (emphasis added).  The duty arises if the underlying complaint contains any facts or allegations which bring the claim "even **potentially** within the protection purchased."[22]  Even if only a single claim in the underlying lawsuit potentially falls within the policy's indemnity coverage, the carrier must defend the entire action.  *Seaboard Sur. Co. v. Gillette Co.*, 476 N.E.2d 272, 275 (N.Y. 1984) ("The duty [to defend] is not contingent on the insurer's ultimate duty to indemnify should the insured be found liable, nor is it material that the complaint against the insurer asserts additional claims which fall outside the policy's general coverage or within its exclusory provisions.").

A carrier seeking to avoid its duty to defend bears a heavy burden which, in practice, is rarely met.  It cannot be relieved from its duty to defend **unless** the court concludes "as a matter of law that **there is no possible factual or legal basis** on which the insurer might eventually be held to indemnify the insured."[23]  Ultimately, "[t]he merits of the complaint are irrelevant and,

---

[19]Braun Decl., ¶ 15.

[20]*General Star Nat'l Ins. Co. v. Universal Fabricators, Inc.*, 585 F.3d 662, 669 (2d Cir. (N.Y.) 2009) ("Federal jurisdiction over this case is based on diversity of citizenship.  In the absence of any contractual obligation of the parties to the contrary, we therefore apply the substantive law of the forum state, New York.").

[21]*Automobile Ins. Co. of Hartford v. Cook*, 7 N.Y.3d 131, 137 (N.Y. 2006).

[22]*Technicon Elecs. Corp. v. American Home Assur. Co.*, 74 N.Y.2d 66, 73-74 (1989) (emphasis added).

[23]*City of Johnstown, N.Y. v. Bankers Standard Ins. Co.*, 877 F.2d 1146, 1149 (2d Cir. (N.Y.) 1989), citing *Villa Charlotte Bronte, Inc. v. Commercial Union Ins. Co.*, 64 N.Y.2d 846, 848 (1985) (emphasis

'[a]n insured's right to be accorded legal representation is a contractual right . . . and this right exists even if debatable theories are alleged in the pleading against the insured.' "[24]   Any doubts about the potential for coverage must be resolved in favor of a defense for the policyholder.[25]

C.   **The Facts Alleged in the *Five Four* Complaint, Not Its Pleading Labels or Names of Claims, Trigger the Duty to Defend**

"Offense-based" coverage for insurance policies like Charter Oak's is based on the facts pled in the underlying complaint against the policyholder, not on the labels given by the underlying plaintiff to its specific causes of action.[26]

D.   **Charter Oak's Policy's "Advertising Injury" Test Applied Here**

The Charter Oak policy defines "advertising injury" as an injury "caused by an offense committed in the course of advertising your goods, products or services . . . ."[27]   There are three requirements under New York Law.[28]   As explained below, the *Five Four* Complaint alleges that CGSI's "advertising" conduct constituted the covered offenses of "infringement of title" and "slogan."   The first two prongs of this test apply.   The third prong is met because, as explained below, none of the exclusions asserted by Charter Oak in its denial letter preclude finding a

---

added).

[24]*Town of Massena v. Healthcare Underwriters Mutual Ins. Co.*, 98 N.Y.2d 435, 444 (2002).

[25]*Village of Sylvan Beach, N.Y. v. Travelers Indem. Co.*, 55 F.3d 114, 115 (2d Cir. (N.Y.) 1995) ("[I]f there is a doubt as to whether the claim comes within the insurer's duty to indemnify, the insurer is generally required to furnish a defense, leaving the issue of indemnification to be settled after establishment of the insured's liability.").

[26]*Syvertsen v. Great Am. Ins. Co.*, 700 N.Y.S.2d 289, 291-92 (App. Div. 1999) (" 'A party's characterization of the causes of action alleged ... are not controlling ... [;] we ... determine the nature of the claims based upon the facts alleged "and not the conclusions which the pleader draws therefrom." ' ");

*Atlantic Mut. Ins. Co. v. J. Lamb, Inc.*, 100 Cal. App. 4th 1017, 1034 (2002) ("The scope of the duty to defend does not depend on the labels given to the causes of action in the third party complaint; instead it rests on whether the **alleged facts or known extrinsic facts** reveal a **possibility** that the claim may be covered by the policy." (emphasis in original)).

[27]Braun Decl., ¶ 4, **Exhibit "1,"** Web Xtend Liability Endorsement, p. 1 of 5.

[28]*Massachusetts Bay Ins. Co. v. Penny Preville, Inc.*, No. 95 Civ. 4845 (RPP), 1996 WL 389266, at *18-19 (S.D.N.Y. July 9, 1996) (J. Patterson) ("[A]n advertising injury under the policies . . . must meet three requirements.  **First**, the injury must have been caused by an offense committed in the course of the insured's advertising its goods, products or services. . . .  **Second**, the offense must be one enumerated in the policy. . . .  **Third**, the advertising injury must not be precluded by policies' express exclusions." (emphasis added)).

defense is owed.

### E.   Infringement During the Charter Oak Policy Term Is Alleged

The Charter Oak policy period is August 31, 2009 – August 31, 2010.[29]  The *Five Four* lawsuit was commenced on December 23, 2009;[30] the second amended *Five Four* Complaint (when CGSI was first added as a defendant in the *Five Four* lawsuit) was filed on March 24, 2010.[31]  The TAC, whose fact allegations are not materially different from those of the *Five Four* Complaint as they pertain to coverage, is referenced herein,[32] as is CGSI's concurrently filed First Amended Complaint in this coverage lawsuit.  The filings of all relevant *Five Four* lawsuit pleadings occurred during the Charter Oak policy term.

The *Five Four* Complaint alleges that "[i]n or around November 2009" (i.e., during the Charter Oak policy term) the Five Four plaintiffs' investigators "conducted a survey of several Wal-Mart stores . . . [and] observed and purchased jeans bearing counterfeit reproductions of the Five Four marks . . . ."  These allegations, read together with those accusing CGSI of "unauthorized use of the Five Four Marks in interstate commerce and advertising," allege the inference that the accused "advertising" (including product displays) that led to Five Four's discovery of the alleged infringement occurred during the Charter Oak Policy term as well.[33]

## IV.   FACTS ESTABLISH POTENTIAL COVERAGE UNDER THE "INFRINGEMENT OF TITLE" OFFENSE

### A.   Facts Potentially Trigger the Offense and the Duty to Defend

Charter Oak's policy's Endorsement provides "advertising injury" coverage for the offense of "infringement of . . . title . . . provided that claim is made or 'suit' is brought by a person or organization claiming ownership of such . . . title" and that the offense is alleged to be

---

[29]Braun Decl., ¶ 4, **Exhibit "1."**

[30]Braun Decl., ¶ 8, **Exhibit "2."**

[31]Braun Decl., ¶ 10, **Exhibit "4."**

[32]Braun Decl., ¶ 11, **Exhibit "12."**

[33]Braun Decl., ¶ 10, **Exhibit "4," ¶¶** 31-32.  The TAC alleges the same conduct during an unspecified period of time that "commenced" . . . "long after [Five Four's] adoption and use of its Five Four marks and 'FF' Design . . . ."  Braun Decl., ¶ 10, **Exhibit "4," ¶** 30.

committed "in the course of advertising . . . [CGSI's 'products']."[34]   Specifically, the Endorsement provides:

> **1.      Insuring Agreement**
>
>     **a.**      We will pay those sums that the insured becomes legally obligated to pay as damages because of . . . "advertising injury" . . . to which this insurance applies.  We will have the right and duty to defend the insured against any "suit" seeking those damages . . . .
>       . . . .
>         **b.**      This insurance applies to: . . .
>           . . . .
>           **(2)**      "Advertising injury" caused by an offense committed in the course of advertising your goods, products or services;
>           . . . .
>
>     "Advertising injury" means injury, arising out of one or more of the following offenses:
>     . . . .
>     c.      Infringement of copyright, title or slogan, provided that claim is made or "suit" is brought by a person or organization claiming ownership in such copyright, title or slogan.

The "advertising injury" offense is triggered because:  (1) the *Five Four* lawsuit is a "suit"; (2) Five Four is an "organization"; (3) Five Four alleges its ownership of "titles" used for jeans; and (4) the "infringement" is alleged to be committed in the course of CGSI's "advertising" of jeans.  The *Five Four* Complaint alleges each element of the offense.

## B.      A "Suit" Has Been Brought

The Charter Oak Policy's Endorsement defines "suit" in part as "a civil proceeding in which damages because of . . . 'advertising injury' . . . to which this insurance applies are alleged."  The *Five Four* lawsuit is a "suit" because it is a "civil proceeding" in which Five Four seeks "damages" allegedly caused by CGSI's infringement.

> 10.      Plaintiffs seek . . . damages . . . .
>     . . . .
> 47.      In light of the foregoing, Plaintiffs are entitled . . . to recover from Defendants all damages . . . that Plaintiffs have sustained and will sustain as a result of such infringing acts . . . .

---

[34]Braun Decl., ¶ 4, **Exhibit "1,"** Web Xtend Liability Endorsement, pp. 1, 4 of 5.

. . . .

> 57.    In light of the foregoing, Plaintiffs are entitled . . . to recover all damages . . . that Plaintiffs have sustained and will sustain . . . as a result of its infringing acts . . . .[35]

## C.    Five Four Is an "Organization"

Five Four alleges:

> 4.    Plaintiff Five Four Clothing, Inc. is a company organized and existing under the laws of the State of California with a corporate office and principle [sic] place of business in Los Angeles, California.[36]

Since the Five Four policy does not define "organization," the Court must determine the word's plain meaning as a reasonable lay policyholder would understand it, with reference to an ordinary dictionary.   As the Second Circuit observed, applying New York law in *First Investors*[37] while applying a dictionary-derived plain-meaning definition of "financial institution":

> When interpreting terms in insurance policies, we are to construe the language at issue "as would the ordinary [person] on the street or ordinary person when he [or she] purchases and pays for insurance, or, in a case such as this one involving a policy issued to a business, by examining the reasonable expectation and purpose of the ordinary business [person] when making an ordinary business contract.   The term is not given a narrow, technical definition by the law.  It is construed, rather, in accordance with its understanding by the average [person] ... who, of course, relates it to the factual context in which it is used."

"Organization" is dictionary-defined in part as:   "**5**. a group of persons organized for some end or work; association . . . ."[38]   That is what Five Four alleges it is.

## D.    CGSI's Alleged Acts Include "Infringement of 'Title'" Owned by Five Four

The Charter Oak policy's "Endorsement" does not define "title."   But "title" is

---

[35]Braun Decl., ¶ 10, **Exhibit "4."**  The TAC also alleges Five Four's entitlement to damages.  Braun Decl., ¶ 11, **Exhibit "12," ¶¶** 10, 44, 67, 94.

[36]Braun Decl., ¶ 10, **Exhibit "4."**  The TAC also alleges that Five Four is an "organization."  Braun Decl., ¶ 11, **Exhibit "12," ¶** 4.

[37]*First Investors Corp. v. Liberty Mut. Ins. Co.*, 152 F.3d 162, 167-68 (2d Cir. (N.Y.) 1998), citing and quoting *Michaels v. City of Buffalo*, 85 N.Y.2d 754, 757 (1995).

[38]RANDOM HOUSE UNABRIDGED DICTIONARY 1364 (2d ed. 1993).

dictionary-defined to simply mean:   "**4.** a descriptive or distinctive appellation . . . ."[39]
"Appellation," in turn, is simply defined as "**1.** a name, title or designation."[40]  New York courts
do not hesitate to rely on dictionary definitions as guides to determine the meaning of undefined
insurance policy terms according to their "common understanding."[41]

The meaning of "title" in the Charter Oak policy, broadly construed in favor of coverage
(as the Court must construe it), is something that "distinctively" "designates" something.  That is
what the Five Four Complaint alleges that its FF Design marks accomplish – and what CGSI
allegedly harms by infringing with its competing mark on its competing jeans:

> 12.     Five Four has grown from a line of six basic tees to
> a full collection of over 150 styles of clothing which include, but
> are not limited to, shirts, jackets, jeans, and sweaters.
>
> 13.     The Five Four brand embodies the spirit of modern
> culture.  Through its progressive designs and modern aesthetic, the
> collection reflects the essence of a brand without boundaries.
>
> 14.     Plaintiff Five Four Clothing, Inc. is the worldwide
> owner of the "FF ONE FIVE FOUR" and "FIVE FOUR FF"
> marks (hereinafter collectively "Four Four Marks" [sic] as seen
> below
>
> **[Visual depiction of "FF Design" inserted here in Complaint]**
> . . . .
>
> 24.     Five Four's most well recognized denim products
> are those bearing the "FF" Design, which features its original one
> of a kind "FF" logo (see below) on the pockets in an assortment of
> different sizes, patterns, and colors.
>
> **[Visual depiction of "FF Design" and "FF Logo" inserted here
> in Complaint]**
> . . . .
> 30.     Plaintiffs have recently discovered that Wal-Mart
> has been selling jeans bearing counterfeit reproductions of the five
> Four Marks.

---

[39]*Id*. at 1989.

[40]*Id*. at 101.

[41]*Lefrak Org., Inc. v. Chubb Custom Ins. Co.*, 942 F. Supp. 949, 955 (S.D.N.Y. 1996) (J. Mukasey)
(consulting dictionary to determine "common understanding" of meaning of  insurance policy's pollution
exclusion term "premises," and finding a defense where one definition did not exclude possibility of
term's application to exterior space and thus beyond exclusion's scope).

> 31.    In   or   around   November   2009,   Plaintiffs'
> investigators   conducted   a   survey   of   several   Wal-Mart   Stores
> throughout the United States for the sale of products bearing
> counterfeit reproductions of Plaintiffs' trademarks.
> . . . .
> 35.    Upon information and belief, Defendant [CGSI] is
> the source and/or supplier of the Infringing Products.
>
> 36.    Defendants are not authorized by Five Four to . . .
> **advertise** . . . merchandise bearing the Five Four Marks.[42]

Five Four alleges that its FF Designs distinctively designate Five Four's fashion jeans as

"embod[ying] the spirit of modern culture.   Through its progressive designs and modern

aesthetic, the collection reflects the essence of a brand without boundaries."[43]   Thus, the Five

Four Marks, including the FF Designs, are "titles" within the meaning of the Charter Oak policy,

dictionary-defined as something that "distinctively . . .  designates" something – and Five Four

alleges that CGSI infringes on the "titles."

Judicial definitions of "title" compel no different result.   The majority of courts[44]

including three state Supreme Courts,[45] have even more broadly defined "title" in insurance

policy coverage provisions as any "name" in the context of a trademark infringement claim,

---

[42]Braun Decl., ¶ 10, **Exhibit "4."**   The TAC substantively alleges the same.   Braun Decl., ¶ 11,
**Exhibit "12,"** ¶¶ 12, 13, 14, 24, 30, 31.

[43]Braun Decl., ¶ 10, **Exhibit "4,"** ¶ 13; Braun Decl., ¶ 11, **Exhibit "12,"** ¶ 13.

[44]*American Econ. Ins. Co. v. Reboans, Inc.*, 900 F. Supp. 1246, 1253 (N.D. Cal. 1994) ("title" refers
to a "distinctive name or designation"; defense found in suit for infringement of luxury goods trademark
"Dunhill");

*American Employers' Ins. Co. v. DeLorme Publ'g Co., Inc.*, 39 F. Supp. 2d 64, 78 (D. Me. 1999)
("title" defined in part as "the name by which anything is know[n]"; defense found in suit alleging
infringement of GPS device "Tripmaker" trademark);

*First State Ins. Co. v. Alpha Delta Phi Fraternity*, No. 1-94-1050, 1995 WL 901452, at *11 (Ill. App.
Ct. Nov. 3, 1995) (same in suit for infringement of college fraternity trademarks that also served as
"titles").

[45]*Acuity v. Bagadia*, 750 N.W.2d 817, 824-25 (Wis. 2008) ("title" defined as a "descriptive or
distinctive" appellation that encompasses six software trademarks in infringement suit);

*Super Duper, Inc. v. Pennsylvania Nat'l Mut. Cas. Ins. Co.*, 683 S.E.2d 792, 797 (S.C. 2009) (where
Travelers, Charter Oak's affiliated entity, was a party) (same reasoning and result because a "title is 'a
descriptive name' . . . [and] trademarks, titles, and slogans are heavily related and can be synonymous.");

*General Cas. Co. of Wis. v. Wozniak Travel, Inc.*, 762 N.W.2d 572, 577 (Minn. 2009) (citing and
following the "broad construction of the plain meaning of title" in *Acuity*, 750 N.W.2d 817).

typically on the grounds that:  (1) the "title" definition of "distinctive appellation" is semantically and functionally like the "trademark" definition of "distinctive mark";[46] and (2) although there may be more restrictive definitions of "title," since there is also a reasonable definition that implicates coverage, the court is required to apply that definition.[47]   Based on these definitions and this rule of construction, claims for "trademark infringement" have been readily found to implicate the "infringement of title" offense.[48]

New York law is no different.  In *J.A. Brundage Plumbing & Roto-Rooter*,[49] "title" was defined as "[a] **mark, style** or designation; a distinctive appellation; the name by which anything is known," citing Black's Law Dictionary 1485 (6th ed. 1990) (emphasis added).  Here again the *Five Four* Complaint alleges that the Five Four Marks are "marks," "designations," and "distinctive:"

> 17.   . . . Through longstanding use, advertising and registration, the Five Four Marks have achieved a high degree of consumer recognition and constitute famous marks.
> . . . .
> 20.   Five Four's Marks are highly recognized by the public and serve to identify the source of the goods as from Five Four.[50]

*J.A. Brundage*, 818 F. Supp. at 559, also noted that in the context of trademarks:

---

[46]*Acuity*, 750 N.W.2d at 826 ("Given the plain meaning of 'title,'  . . . we conclude that the 'infringement of title' provision in Acuity's CGL policy encompasses claims of trademark infringement.").

[47]*Id*. at 825 ("[I]t is reasonable to interpret the phrase 'infringement of title' as broad enough to embrace trademark infringement, in part because 'infringement of title' is susceptible to multiple interpretations, and in such event, our courts construe the provision in favor of coverage.").

[48]*Charter Oak Fire Ins. Co. v. Hedeen & Cos.*, 280 F.3d 730, 736 (7th Cir. (Wis.) 2002) (same, reasoning that " 'infringement' means using someone else's words," while " 'title' refers to names and related trademarks . . . .");

*Sentex Sys., Inc. v. Hartford Acc. & Indem. Co.*, 882 F. Supp. 930, 944 (C.D. Cal. 1995), *abrogated on other grounds*, *Simply Fresh Fruit, Inc. v. Continental Ins. Co.*, 84 F.3d 1105 (9th Cir. (Cal.) 1996) (same reasoning and result, refusing to limit "title" to context of copyright infringement).

[49]*J.A. Brundage Plumbing & Roto-Rooter, Inc. v. Massachusetts Bay Ins. Co.,* 818 F. Supp. 553, 559 (W.D.N.Y. 1993), *vacated by reason of settlement*, 153 F.R.D. 36 (W.D.N.Y. 1994)

[50]Braun Decl., ¶ 10, **Exhibit "4."**   The TAC alleges the same.   Braun Decl., ¶ 11, **Exhibit "12,"** ¶¶ 17, 20.

> "A title may become a subject of property; as one who has adopted a particular title for a newspaper, or other business enterprise, may, by long and prior usage, or by compliance with statutory provisions as to registration and notice, acquire a right to be protected in the exclusive use of it."
>
> Clearly, then, infringement of "title" can include trademark or tradename infringement.  [Citation omitted.]

Similarly, in *Energex Systems Corp.*[51] the court reviewed a carrier's decision to refuse coverage when the underlying action alleged trademark infringement as one of several causes of action.  In finding a duty to defend, the court stated:

> While an injury defined as "infringement of title" may not cover all trademark infringement claims, the language clearly suggests coverage of claims where there are allegations of infringing a company's mark or slogan.

Here too, the facts Five Four alleged include CGSI's infringement of Five Four's "title" – i.e., its trademarks that distinctively designate Five Four's jeans with symbols and words that allegedly have come, through Five Four's efforts, to connote both the jeans' origin and quality.  These allegations trigger the Charter Oak policy's "advertising injury" offense of "infringement of title."

In contrast, *A Touch of Class Imports, Ltd. v. Aetna Cas. & Sur. Co.*, 901 F. Supp. 175, 176 (S.D.N.Y. 1995) suggested in *dicta* and without citation to authority or discussion that trademarks for advertising ephemera like "the color of an item . . . the location of a patch on a pair of jeans . . . the scent of an item . . . and the design of a package" might not constitute a "title."  But the Five Four Marks and Design in dispute here are not ephemera.  Five Four alleges that they embody and communicate both the Five Four origin of the trademarked jeans and the social status values that Five Four contends it has spent substantial sums to establish in association with the jeans.[52]  Unlike in *A Touch of Class*, the Five Four Marks are content-laden, thereby falling within the "title" definition.

---

[51]*Energex Sys. Corp. v. Fireman's Fund Ins. Co.*, No. 96 Civ. 5993 (JSM), 1997 WL 358007, at *4 (S.D.N.Y. July 24, 1997) (J. Martin) (applying New York law).

[52]Braun Decl., ¶10, **Exhibit "4,"** ¶¶ 11-28; Braun Decl., ¶11, **Exhibit "12,"** ¶¶ 11-28.

### E.     The "Infringement" Is Alleged to Have Occurred "In the Course of Advertising" CGSI's Goods

#### 1.     "Advertising" Is Pled

The *Five Four* Complaint repeatedly alleges that CGSI's damaging acts of "infringement" include the "advertising" of its infringing jeans.

> 3.     This action arises out of wrongful acts, **including advertising**, offering for sale, selling and distributing products by Defendants . . . .
> . . . .
> 40.     Defendants' unauthorized use of the Five Four Marks in interstate commerce and **advertising** relating to same constitutes false designation of origin and a false representation that the goods and services are manufactured, offered, sponsored, authorized, licensed by or otherwise connected with Plaintiffs or come from the same source as Plaintiffs' goods and are of the same quality as that assured by the Five Four Marks.
> . . . .
> 53.     Defendants' unauthorized use of the "FF" Design on its merchandise in interstate commerce and **advertising** relating to same constitutes false designation of origin and a false representation that the goods and services are manufactured, offered, sponsored, authorized, licensed by or otherwise connected with Plaintiffs or come from the same source as Plaintiffs' goods when in fact they do not.[53]

Five Four's "advertising" allegations are conclusory, as were those in *Century 21, Inc.*[54] which sufficed to trigger coverage.  Five Four's allegations suffice to trigger coverage here as well.

The Charter Oak policy does not define "advertising."  But the term is dictionary-defined in part to mean:  "**1.** The act or practice of calling public attention to one's product . . . ."  RANDOM HOUSE UNABRIDGED DICTIONARY 29 (2d ed. (1993).   There is no applicable definitional limit on the means by which "advertising" may occur, nor have courts applying New York law found otherwise.  But New York courts have found the plain and ordinary meaning of "advertising" to include "any written statement . . . 'made by the seller in any manner in connection with the solicitation of business.'  To advertise is '[t]o advise, announce, apprise,

---

[53]Braun Decl., ¶ 10, **Exhibit "4."**  The TAC alleges the same.  Braun Decl., ¶ 11, **Exhibit "12,"** ¶¶ 3, 31, 49, 52, 62, 74, 76, 85.

[54]*Century 21, Inc. v. Diamond State Ins. Co.*, 442 F.3d 79, 83 (2d Cir. (N.Y.) 2006).

commend, give notice of, inform, make known, publish [or] call to the public attention.' "[55]

The underlying lawsuit need not particularize the extent or means by which the policyholder engaged in "advertising" for a potential "advertising injury" to be found and a defense required.  In *Century 21, Inc.*, 442 F.3d at 83, the court applied New York law to rule that the underlying complaint's conclusory, nonspecific allegation that the policyholder "marketed" its allegedly infringing goods sufficiently pled "advertising" and triggered "advertising injury" coverage.

Even if New York law required the *Five Four* Complaint to allege the specific means by which the "advertising" occurred, Five Four meets the requirement by alleging "advertising" by means of CGSI's (and Walmart's) store displays of CGSI jeans with the allegedly infringing marks on their back pockets.

> 30.     Plaintiffs have recently discovered that Wal-Mart has been selling jeans bearing counterfeit reproductions of the five Four Marks.
>
> 31.     In or around November 2009, Plaintiffs' investigators conducted a survey of several Wal-Mart Stores throughout the United States for the sale of products bearing counterfeit reproductions of Plaintiffs' trademarks.
> . . . .
> 35.     Upon information and belief, Defendant [CGSI] is the source and/or supplier of the Infringing Products.
>
> 36.     Defendants are not authorized by Five Four to . . . **advertise** . . . merchandise bearing the Five Four Marks.[56]

Such displays constitute "advertising" and potentially trigger the offense.[57]   No case applying New York law known to CGSI has held otherwise.

---

[55]*Berman v. General Acc. Ins. Co. of Am.,* 671 N.Y.S.2d 619, 623 (App. Div. 1998) (citation omitted).

[56]Braun Decl., ¶ 10, **Exhibit "4."**   The TAC alleges much the same.  Braun Decl., ¶ 11, **Exhibit "12,"** ¶¶ 30-33.

[57]*Kirk, King, King Constr., Inc. v. Continental Western Ins. Co.*, 123 S.W.3d 259 (Mo. Ct. App. 2003) ("advertising" of infringing home designs by display of model homes built to design specifications triggers "advertising injury" offense);

*Bear Wolf, Inc. v. Hartford Ins. Co.,* 819 So. 2d 818 (Fla. App. 2002) ("advertising" of cigar-shaped lighter by trade show display of same triggers the offense).

## 2.    "In the Course of" Is Pled

The *Five Four* Complaint specifically alleges that the "infringement of title" (and

"infringement of slogan") offenses were committed "in the course of" CGSI's advertising:

> 3.    This action arises out of wrongful acts, **including advertising**, offering for sale, selling and distributing products by Defendants . . . .
> . . . .
> 36.    Defendants are not authorized by Five Four to . . . **advertise** . . . merchandise bearing the Five Four Marks . . . .
> . . . .
> 40.    Defendants' unauthorized use of the Five Four Marks in interstate commerce **and advertising relating to same** constitutes false designation of origin and a false representation that the goods and services are manufactured, offered, sponsored, authorized, licensed by or otherwise connected with Plaintiffs or come from the same source as Plaintiffs' goods and are of the same quality as that assured by the Five Four Marks.
> . . . .
> 53.    Defendants' unauthorized use of the "FF" Design on its merchandise in interstate commerce **and advertising relating to same** constitutes false designation of origin and a false representation that the goods and services are manufactured, offered, sponsored, authorized, licensed by or otherwise connected with Plaintiffs or come from the same source as Plaintiffs' goods when in fact they do not.[58]   [Emphasis added.]

The Policy does not require that any damages be caused by the policyholder's

"advertising" as a condition for coverage.   So long as an "advertising injury" *offense* is

"committed in the course of" advertising, the causal nexus between these two policy elements is

satisfied.

Proof of proximate causation between the "advertising" and the offense is also not

required.[59]   The Policy only requires the "advertising" to "contribute materially" to liability that

potentially falls within the covered "advertising injury" offense[60] to be "committed in the course

---

[58]Braun Decl., ¶ 10, **Exhibit "4."**  The TAC alleges much the same.  Braun Decl., ¶ 11, **Exhibit "12,"** ¶¶ 32-33, 42, 64, 76.

[59]*Sentex Sys., Inc. v. Hartford Acc. & Indem. Co.*, 882 F. Supp. 930, 945 (C.D. Cal. 1995), *aff'd,* 93 F.3d 578 (9th Cir. (Cal.) 1996) ("The case law, however, does not require the advertising activities to be the only cause of the advertising injuries. . . . Nor is the insured required to conclusively establish causation at the duty to defend stage.  In determining whether causal connection exists, courts must still apply 'the potential liability' standard. . . . *See also Bank of the West*, 2 Cal. 4th at 1275-1276." (citation omitted)).

[60]*Acuity*, 750 N.W.2d at 830, 831 (Wis. 2008) ("In [*Fireman's Fund Ins. Co. of Wis. v. Bradley Corp.*,

of" advertising.[61]  The required causal nexus is only between an "advertising injury" *offense* and "*advertising*"[62] – nothing more, as a plethora of decisions by federal district courts applying New York law have found.  That nexus is easily met here where Five Four alleged the "advertising injury" offenses of infringement of title and slogan by advertising.

Five Four's allegations of CGSI's infringing conduct in the course of its "advertising" its jeans on display at Walmart[63] are incorporated by reference into Five Four's trademark and trade dress infringement and unfair competition claims.[64]  CGSI's liability to Five Four and the resulting damages Five Four seeks are alleged to be based on CGSI's "advertising."  Five Four's allegations thus satisfy the Charter Oak policy's causal nexus requirement.

---

660 N.W.2d 666 (Wis. 2003)], we explained that in order to constitute a causal connection between advertising and harm, the advertising need not be the sole cause of harm.  Rather, the advertising must merely 'contribute materially' to the harm. . . . UNIK did not contest that it used Symantec's trademarks in a manner that was likely to cause consumer confusion. . . . Advertising likely materially contributed to consumer confusion.");

*AMCO Ins. Co. v. Lauren-Spencer, Inc.*, 500 F. Supp. 2d 721, 732 (S.D. Ohio 2007) ("[T]he use of trade dress in [*Westfield Ins. Co. v. Factfinder Mktg. Research, Inc.*, 168 Ohio App. 3d 391, 401, 860 N.E.2d 145, 152 (Ohio Ct. App. 2006)] constituted an injury that satisfied the nexus between advertising activity and alleged advertising injury.  The advertising does not just reveal an injury; it also contributes to it by helping to create consumer confusion . . . ." (footnote omitted)).

[61]*Energex*, 1997 WL 358007, at *1, *3 (duty to defend found where underlying complaint was concerned with customer confusion, and such confusion was clearly created through advertising);

*Penny Preville*, 1996 WL 398266, at *7-8 (duty to defend found where connection between injuries alleged and activities of insured implicating advertising alleged);

*Ben Berger & Sons, Inc. v. American Motorists Ins. Co.*, No. 94 Civ. 3250, 1995 WL 386560, at *3 (S.D.N.Y. June 29, 1995) (J. Chin) ("advertising injury" based on insured's trade dress infringement found because insured's advertising in same catalogues where plaintiff's competing products previously were advertised "caused confusion as to the source of the products");

*J.A. Brundage*, 818 F.Supp. at 558 (allegations that trademark infringement in connection with advertising and sale of infringing products sufficiently alleged causation to require a defense).

[62]*Peerless Lighting Corp. v. American Motorists Ins. Co.*, 82 Cal. App. 4th 995, 1007-08 (2000) ("*C. The Policy Only Covers Offenses 'Committed in the Course of Advertising'* . . . . The real issue . . . is whether [the insured] committed the alleged offense (infringement of trade dress) *in the course of advertising* its goods or services.").

[63]Braun Decl., ¶ 10, **Exhibit "10,"** ¶¶ 30-36.

[64]Braun Decl., ¶ 10, **Exhibit "4,"** ¶¶ 37, 48.

## V.     FACTS ESTABLISH POTENTIAL COVERAGE UNDER "INFRINGEMENT OF SLOGAN" OFFENSE

### A.     Facts Potentially Trigger the Offense and the Duty to Defend

The same facts discussed above that support "infringement of title" also support the "infringement of slogan" offense.  The Charter Oak policy's Endorsement provides "advertising injury" coverage for the offense of  "infringement of . . . slogan, provided that claim is made or 'suit' is brought by a person or organization claiming ownership of such . . . slogan" and that the offense is alleged to be committed "in the course of advertising . . . [CGSI's 'products]."[65]

The offense is triggered because for the reasons discussed above:  (1) the *Five Four* lawsuit is a "suit"; (2) Five Four is an "organization"; (3) the *Five Four* Complaint alleges Five Four's ownership of "slogans" (i.e., the jeans trademarks, including the Five Four Designs which communicate to the public something about the jeans' origin and quality and which CGSI is allegedly infringing); and (4) the "infringement" is alleged to be committed "in the course of" CGSI's "advertising" of its jeans.

For the reasons explained in the previous section, the *Five Four* Complaint alleges the "suit," "organization," and "in the course of 'advertising' " elements (which are identical to those required to trigger the "infringement of title" offense).  The only additional issue here is whether the Five Four Marks that CGSI is allegedly infringing also function as "slogans" within the meaning of the Charter Oak policy.  For the reasons explained below, they do.

### B.     The *Five Four* Complaint Alleges "Infringement of Slogan"

Although the *Five Four* Complaint does not use the precise words "infringement of slogan," this is of no moment, especially as there is no recognized cause of action for "infringement of slogan."  Five Four's fact allegations of CGSI's infringement of the Five Four Design implicate the covered "infringement of slogan" offense that suffices to trigger a defense.

In *Ultra Coachbuilders, Inc.,*[66] New York law required a defense under the policy's

---

[65]Braun Decl., ¶ 4, **Exhibit "1,"** Web Xtend Liability Endorsement, pp. 1, 4 of 5.

[66]*Ultra Coachbuilders, Inc.*, 2002 WL 31528474, at *3 (J. Stanton).

"infringement of . . . slogan" offense even though no claim in the underlying suit was denominated "infringement of slogan."  Nor did the underlying complaint refer to the phrase "Quality Vehicle Modifier" as a slogan – because the phrase, broadly construed in favor of coverage as required, potentially was a "slogan" as a reasonable policyholder would understand the term.  *Id.* at \*3, defining "slogan" as including "a phrase used to promote a product mark or house mark" and "a brief attention-getting phrase used in advertising . . . ."

The *Ultra Coachbuilders* court observed:  "[T]he fact that the *Ford* complaint does not refer to QVM as a slogan 'does not mean that the complaint could not be read as alleging slogan infringement.' "  *Id.*   Rather, the mere possibility that the policyholder could reasonably understand "slogan" to mean a "brief attention-getting phrase used in advertising" sufficed to trigger the offense.  QVM, an abbreviation analogous to a symbol, communicated in shorthand what a limousine purchaser could expect – a vehicle meeting the manufacturer's quality control procedures.  Both are shorthand devices that convey much with little.  For the same reason, in the present case the allegedly infringed Five Four Design on the Five Four jeans back pockets is a "slogan" because it symbolizes the jeans' elite, high-fashion qualities that Five Four allegedly spent considerable time and money to establish in the public mind.

Similarly, in *Zen Design Group*[67] a wearable LED flashlight with the "Sapphire" product name was advertised using the trademark "The Wearable Light," which the appellate court deemed a "slogan" because it conveyed a quality of the product – its wearability.  In so doing the court flatly rejected the carrier's argument that "The Wearable Light" was a mere "house mark" or "product mark" that could not also function as a "slogan," dictionary-defined in part as a "catch word or phrase."  *Id.* at 555.   The court instead emphasized that in the relevant advertisement the word "Sapphire" was "the name of the product," while in the same ad "The Wearable Light" "can be easily construed as a 'catchword or catch phrase' used by the manufacturer to promote its product" and thus, by definition, was a "slogan."  *Id.* at 556-57.  The

---

[67]*Cincinnati Ins. Co. v. Zen Design Group, Ltd.*, 329 F.3d 546, 553-57 (6th Cir. (Mich.) 2003).

Five Four Design serves the same "quality conveying" function without being the jeans' "product name."

Consistent with these views, courts in New York have held the "infringement of slogan" policy offense can be triggered by pleading facts that also constitute "trademark infringement" or "trade dress infringement."  For example, in *A Touch of Class Imports*[68] the Southern District of New York defined "slogan" as **any** word or combination of words that act as an "attention-getting device."  In so doing the court took judicial notice of several advertising "slogans," including "Big Mac," "Chapstick," and "Cheerios," then found the phrase "A Touch of Class" was a similar "attention-getting device" for the policyholders' jewelry.[69]  Because the policy there at issue only excluded trademark infringement that did not implicate a "title" or "slogan," the potential for coverage was found and a defense to the underlying lawsuit was owed.

Here too, the *Five Four* Complaint alleges that Five Four's trademarks function as "attention-getting devices:"

> 13.    The Five Four brand embodies the spirit of modern culture.  Through its progressive designs and modern aesthetic, the collection reflects the essence of a brand without boundaries.
> . . . .
> 17.    . . . Through longstanding use, advertising and registration, the Five Four Marks have achieved a high degree of consumer recognition and constitute famous marks.
> . . . .
> 20.    Five Four's Marks are highly recognized by the public and serve to identify the source of the goods as from Five Four.
> . . . .
> 28.    Due to its long use, extensive sales, and significant advertising and promotional activities, Five Four's "FF" Design has achieved widespread acceptance and recognition among the consuming public and trade throughout the United States.[70]

---

[68]*A Touch of Class Imports, Ltd. v. Aetna Cas. & Sur. Co.*, 901 F. Supp. 175, 177 (S.D.N.Y. 1995) (J. Baer).

[69]*Id.  See also American Express Co. v. Vibra Approved Lab. Corp.*, No. 87 CIV 8840 (CSH), 1989 WL 39679 (S.D.N.Y. Apr. 19, 1989) (J. Haight) (noting that American Express Co.'s slogan "Don't leave home without it" was a protected trademark).

[70]Braun Decl., ¶ 10, **Exhibit "4."**  The TAC alleges the same.  Braun Decl., ¶ 11, **Exhibit "12,"** ¶¶ 13, 17, 20, 28.

The "infringement of slogan" offense is triggered because Five Four alleges that CGSI infringed its "FF Design" symbol trademarks with its own similar symbols on CGSI jeans.[71] Those abstract symbols do double-duty as trademarks and slogans by designating the origin and quality of Five Four's jeans (trademark), and by calling public attention to the house mark, Five Four (slogan).  So, CGSI's alleged infringement of the Five Four Design triggers the Charter Oak policy's "advertising injury" offense of "infringement of slogan."

### C.     The Second Circuit's *Hugo Boss* Opinion, Which Predates *Ultra Coachbuilders* and *Zen Design*, Is Readily Distinguishable

In *Hugo Boss*[72] the Second Circuit, applying New York law, explained why marks like CGSI's may be "slogans."  *Hugo Boss*, 252 F.3d at 610-12, addressed the narrow question of whether the "Hugo Boss" trademark (consisting of the words "Hugo Boss" – not symbols) could constitute a "trademarked slogan" "used to **promote** or **advertise** a house mark or product mark" and reminding consumers of the holder's product mark or house mark.

*Hugo Boss* did not hold that a "trademark" cannot be a "slogan."  It merely held that a "slogan" cannot be the name of the product or its owner.  **It "must be something, *other than the house mark or product mark itself*, that provides such a reminder [of the brand to which the mark relates]."**  *Id*. at 619 (bold emphasis added).  In so ruling, *Hugo Boss* defined "house mark" as "a company name or line of products," and "product mark" as "the name of a particular product."  *Id*. at 619 n.7.

*Hugo Boss* relied on *Blau Plumbing, Inc.*[73] and explained that case:

> [I]mplicitly, though unambiguously, acknowledged the distinction between trademarked house or product names, on the one hand, and slogans or other kinds of trademarks, on the other.  That court described a trademarked "slogan," together with a trademarked "combination of words and symbols[,] ornamental feature, [or] a distinctive shape," as "something ... intended to remind the consumer of the brand." . . . Thus, it seems clear that **a "slogan"**

---

[71] Braun Decl., ¶ 10, **Exhibit "4,"** ¶¶ 14, 24.   The TAC alleges the same.  Braun Decl., ¶ 11, **Exhibit "12,"** ¶¶ 14, 24.

[72] *Hugo Boss Fashions, Inc. v. Federal Ins. Co.*, 252 F.3d 608 (2d Cir. (N.Y.) 2001).

[73] *Blau Plumbing, Inc. v. S.O.S. Fix-It, Inc.*, 781 F.2d 604 (7th Cir. (Wis.) 1986).

> **must be something,** *other than the house mark or product mark itself*, that provides such a reminder.

*Hugo Boss*, 252 F.3d at 619 (bold emphasis added).

Here, as in *Ultra Coachbuilders* and *Zen Design*, the "mark" at issue is not a "house mark" (the "Five Four" company name) or a "product mark" ("Five Four" jeans). Unlike the allegations in *Hugo Boss*, the Five Four Design mark is alleged to be both a trademark and "something other than" the words "Five Four" – the house and product mark. The allegedly infringed mark is a symbol that reminds consumers of both the house and product mark by conveying their qualities – just as the marks at issue in *Ultra Coachbuilders* and *Zen Design* did.

The same reasoning was applied to require a defense in *Hudson Insurance*,[74] which, citing and following *Zen Design*, held the potential for "infringement of slogan" coverage was triggered by underlying allegations that the policyholder was using the phrase "Steel Curtain" – trademarked shorthand for four members of the Pittsburgh Steelers' linesmen that the underlying plaintiff National Football League used as an "attention-getting" device to promote valuable fan loyalty. *Id* at *2. "Steel Curtain" promoted the "house names" and "product names" of the NFL and the Steelers without being either. Here too, since the Five Four Design is alleged to be similarly "used [by Five Four] to **promote** or **advertise** a house mark" but not to constitute the "house mark" or product mark, the Design qualifies as a "slogan" under *Hugo Boss*.

> 14.    Plaintiff Five Four Clothing, Inc. is the worldwide owner of the "FF ONE FIVE FOUR" and "FIVE FOUR FF" marks (hereinafter collectively "Four Four Marks" [sic] as seen below
>
> **[Visual depiction of "FF Design" inserted here in Complaint]**
>                       . . . .
> 24.    Five Four's most well recognized denim products are those bearing the "FF" Design, which features its original one of a kind "FF" logo (see below) on the pockets in an assortment of different sizes, patterns, and colors.
>
> **[Visual depiction of "FF Design" and "FF Logo" inserted here in Complaint]**[75]

---

[74]*Hudson Ins. Co. v. Colony Ins. Co.*, No. EDCV 07-01497-SGL (OPx), 2008 WL 5504572 (C.D. Cal. Dec. 16, 2008), a trademark infringement and unfair competition case.

[75]Braun Decl., ¶ 10, **Exhibit "4."**  The TAC alleges the same.  Braun Decl., ¶ 11, **Exhibit "12,"**

*Hugo Boss* did not limit "slogan" to words and did not exclude symbols. It held that a "slogan" can be a "phrase[] used to *promote or advertise* a house mark or product mark." *Id.* at 618. But a "phrase" was not held to exclude symbols like the FF Design or to require words. *Hugo Boss* did not consider or rule on the issue of whether a "slogan" within the meaning of an insurance policy like Charter Oak's must consist of words and cannot consist of symbols. That is because the mark at issue in *Hugo Boss* consisted of words ("Hugo Boss"), not abstract symbols as here. A case is not authority for a proposition it did not discuss or rule upon.[76]

Since 2001, when *Hugo Boss* was decided, courts applying New York law have not applied *Hugo Boss*'s "slogan" restrictions to bar a defense where, as here, the mark at issue is not the "house name" or "product name" but instead calls attention to the qualities of one or the other. The "QVM" mark [short for "Quality Vehicle Modifier"] was held to be a "slogan" because it is "descriptive" of Ford Motor Company's authorization program for limousine conversions.[77]

No case known to CGSI has ever ruled on this issue adversely to CGSI. Logic dictates that anything that calls attention to a "house mark" or "product mark," whether verbally articulable or not, qualifies as a "slogan" by serving the function defined by *Hugo Boss*. This result is fully consistent with New York's requirement that ambiguous words of coverage in an insurance policy be construed and applied in favor of coverage.[78] The *Five Four* Complaint potentially alleges facts that trigger "advertising injury" coverage under Charter Oak's "infringement of slogan" offense.

---

¶¶ 14, 24.

[76]*Cooper Indus., Inc. v. Aviall Servs., Inc.*, 543 U.S. 157, 170, 125 S. Ct. 577, 586 (2004) (" 'Questions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents.' "); *Rosen v. State Farm Gen. Ins. Co.*, 30 Cal. 4th 1070, 1076 (2003) (" 'It is a well-established rule that an opinion is only authority for those issues actually considered or decided.' ").

[77]*Ultra Coachbuilders, Inc.*, 2002 WL 31428474, at *3.

[78]*Town of Massena*, 98 N.Y.2d at 444.

## VI.   NO POLICY EXCLUSION BARS A DEFENSE

### A.   The Exclusions Cited by Charter Oak When Denying a Defense Do Not "Unavoidably Bar" a Defense As New York Law Requires

In its letter denying a defense, Charter Oak cited five exclusions that it contends bar a defense even if coverage is triggered.[79] They are: "Knowing Violations of Rights of Another," "Material Published with Knowledge of Falsity," "Material Published Prior to Policy Period," "Criminal Acts," and "Unauthorized Use of Another's Name or Product [in an Email Address, Domain Name or Metatag]."

Under New York law Charter Oak bears a very heavy burden to prove that any exclusion applies to bar a defense. In sharp contrast to CGSI's burden of proving that there **may potentially be coverage** to require a defense, Charter Oak must prove that its exclusion clearly and unambiguously **must apply under all possible circumstances.** The *National Football League*[80] court also held when refusing to bar a defense to an NFL would-be draftee's antitrust action. In that case, the court ruled that the insurer-asserted Employment Practices Exclusion was not stated in terms unambiguously including the NFL's dealings with prospective as well as actual "employees."

Similarly, when refusing to enforce a Criminal Acts Exclusion and requiring a defense where no criminal charges had been brought against the policyholder, *DiBartolo*[81] confirmed that in New York an enforceable exclusion must not be subject to conflicting interpretations.

Thus, "policy exclusions are given a strict and narrow construction, with any ambiguity resolved against the insurer."[82] If **the policyholder** offers a "plausible interpretation" of how an

---

[79]McDonald Decl., ¶ 7, **Exhibit "10,"** pp. 2-3.

[80]*National Football League v. Vigilant Ins. Co.*, 824 N.Y.S.2d 72, 75 (App. Div. 2006), citing *Continental Cas. Co. v. Rapid-American Corp.*, 609 N.E.2d 506 (N.Y. 1993). ("To negate coverage by virtue of an exclusion, an insurer must establish that the exclusion is stated in clear and unmistakable language, is susceptible to no other reasonable interpretation, and applies in the particular case.").

[81]*Allstate Ins. Co. v. DiBartolo*, 618 N.Y.S.2d 828, 829 (App. Div. 1994) ("It is well settled that "if the insurer is to be relieved of a duty to defend, it must demonstrate that the allegations of the underlying complaint place that pleading solely, and entirely, within exclusions of the policy, and that the allegations are subject to no other interpretation.").

[82]*Belt Painting Corp. v. TIG Ins. Co.*, 100 N.Y.2d 377, 383 (2003) (refusing to bar defense to personal injury suit by worker injured by paint fumes based on policy's Pollution Exclusion where

exclusion may not apply, "**its position must be sustained**."[83]

For the reasons stated below, Charter Oak cannot meet its burden of proving that any of the five exclusions cited in its denial letter bar a defense.

**B.     None of the Exclusions Cited in Charter Oak's Denial Letter Bar a Defense**

**1.     The *Five Four* Complaint Does Not Allege Facts that Inevitably Bring Its Claims Within the "First Publication" Exclusion**

The "Material Published Prior to Policy Period" exclusion bars:

> "Personal injury", "advertising injury" or "web site injury" arising out of oral, written or electronic publication of material whose first publication took place before the beginning of the policy period.[84]

For this exclusion to apply, the *Five Four* Complaint must allege with specificity, and without ambiguity, that CGSI first "published" (i.e., used) the accused mark/title/slogan on its publicly displayed jeans before **August 31, 2009**, the date Charter Oak's policy term commenced.

But the *Five Four* Complaint does not allege this, nor does it allege any other "first publication" date.  Five Four alleges only that it "recently discovered that [co-defendant Walmart] has been selling jeans bearing counterfeit reproductions of the Five Four Marks," apparently based on a **November 2009** "survey," and that CGSI "is the source" of those jeans.[85]

Such allegations have been held not to trigger "first publication" or "prior publication" exclusions because they were ambiguous as to whether the "publication" commenced before or during the policy term.  *Ecology Works*[86] held that where, as here, the underlying complaint does

---

exclusion did not unequivocally exclude damages cause by exposure to worker's tools of the trade).

[83]*National Football League*, 824 N.Y.S.2d at 76 (emphasis added).

[84]Braun Decl., ¶ 4, **Exhibit "1,"** Web Xtend Liability Endorsement, p. 2 of 5.

[85]Braun Decl., ¶ 10, **Exhibit "4,"** ¶¶ 30, 31, 35.  The TAC also alleges an indeterminate "first publication" that may have commenced during the Charter Oak policy term.  Braun Decl., ¶ 11, **Exhibit "12,"** ¶¶ 30, 31.

[86]*Ecology Works, Inc. v. Essex Ins. Co.*, 58 Fed. Appx. 714, 717 (9th Cir. (Cal.) 2003) (reversing district court to find potential for "advertising injury" coverage and duty to defend where complaint did not specifically allege commencement date of trademark infringement; evidence from insured's underlying lawsuit interrogatory responses of first publication predating policy term potentially vitiated duty to indemnify but not duty to defend).

not unambiguously and specifically allege the date of "first publication" (here, the date on which CGSI first began to publicly display its jeans with Five Four's allegedly infringing mark), the court must interpret the allegations in light of its overriding obligation to find a defense based on the mere "potential" for coverage.  Other cases involving similarly indefinite pleaded facts have refused to apply the exclusion.[87]  All depend upon the rationale that the underlying lawsuit's failure to specify a first date for a potentially covered wrongful act before the policy's inception means the exclusion cannot preclude a defense.[88]

Five Four's allegations of its "recent discovery" of CGSI's purported infringement based on investigations in 2009, during the Charter Oak policy term, similarly leave open the possibility that CGSI's first infringement occurred during the term.  This possibility suffices under New York law to prohibit allowing the "first publication" exclusion to bar a defense for CGSI.  Charter Oak cannot meet its burden of proving otherwise with the required certainty.[89]

---

[87]*Finger Furniture Co. v. Travelers Indem. Co.*, No. H-01-2797, 2002 WL 32113755, at *11-13 (S.D. Tex. Aug. 19, 2002) (allegations that infringed mark was registered 35 years before underlying complaint was filed and that infringing publication occurred beginning "at a time subsequent" to that without alleging how long after the registration was factually ambiguous as to whether first infringement occurred during policy term; thus, "prior publication" exclusion did not bar a defense);

*Carnival Brands, Inc. v. American Guar. & Liab. Ins. Co.*, 726 So. 2d 496, 500 (La. Ct. App. 1999) ("First publication exclusion" not applied because in complaint filed in 1997, allegations that insured's misappropriation of mark "in the early 1990's" and that it "recently" used infringing name in advertising supported finding that insured may have first published wrongful statements during 1996-1997 policy term.).

[88]*Ecology Works*, 58 Fed. Appx. at 717, criticizing the district court's contrary ruling:  "Rather than deciding the duty to defend issue by looking at the potential for coverage and then determining whether Essex had conclusively eliminated that potential, the district court jumped directly to the extrinsic evidence, concluding from the interrogatory responses . . . that the policy was never triggered.  **In other words, the district court made a coverage determination, not a duty to defend determination.**" (Emphasis added.)

[89]*Guardian Trust Co. v. American States Ins. Co.*, No. 95-4073-SAC, 1996 WL 509638, at *10 (D. Kan. July 30, 1996) (Exclusion did not apply because underlying complaint alleged covered disparaging statements "from and including at least March, 1991," meaning the statements may have been made and resulting injury may have occurred after the policy term commenced.  "Prior publication" exclusion does not bar a defense due to uncertainty that publication and injuries predated the policy.  "For as long as the application of this exclusion remains simply a possibility, the insurer has a duty to defend.");

*J. Lamb, Inc.*, 100 Cal. App. 4th at 1038, 1040 ("Even though it may ultimately be determined that Atlantic Mutual has a viable defense to coverage by virtue of the application of the . . . exclusion, this can *only* affect its liability for indemnification.  Its duty to defend depended on the existence of only a *potential* for coverage.  That *potential* was never conclusively negated and obviously cannot be negated

2.    The *Five Four* Complaint Does Not Allege Facts that Inevitably Bring Its Claims Within the "Knowing Violation" and "Knowledge of Falsity" Exclusions

The "Knowing Violation of Rights of Another" exclusion bars:

> "Personal injury", "advertising injury" or "web site injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal injury", "advertising injury" or "web site injury".[90]

The "Material Published with Knowledge of Falsity" exclusion bars:

> "Personal injury", "advertising injury" or "web site injury" arising out of oral, written or electronic publication of material, if done by or at the direction of the insured with knowledge of its falsity.[91]

Neither of these exclusions can apply and Charter Oak cannot meet its burden of conclusively proving otherwise because CGSI could be found liable to Five Four based on conduct that need not amount to or require such "knowledge."  For example, liability could be based on findings of reckless or negligent disregard of Five Four's rights.[92]  So, like courts of other jurisdictions,[93] New York state and federal courts refuse to apply these exclusions to bar a defense to such indefinite allegations.[94]

---

short of an actual trial to resolve what is clearly a genuine factual dispute.").

[90]Braun Decl., ¶ 4, **Exhibit "1,"** Web Xtend Liability Endorsement, p. 1 of 5.

[91]Braun Decl., ¶ 4, **Exhibit "1,"** Web Xtend Liability Endorsement, p. 1 of 5.

[92]*Johnson & Johnson v. Carter-Wallace, Inc.*, 631 F.2d 186, 188-89 (2d Cir. (N.Y.) 1980) (intent is not a requirement of Lanham Act trademark infringement).

[93]*Adolfo House Distrib. Corp. v. Travelers Prop. & Cas. Ins. Co.,* 165 F. Supp. 2d 1332, 1341 (S.D. Fla. 2001) ("Knowledge of falsity" exclusion did not bar defense where underlying complaint "[left] open the possibility that [the insured] might be liable for unintentional acts of trade dress infringement.");

*Elcom Techs., Inc. v. Hartford Ins. Co. of the Midwest*, 991 F. Supp. 1294, 1298 (D. Utah 1997) (Knowledge-based exclusion did not negate duty to defend because false advertising claim could be proved by establishing reckless indifference.).

[94]*Penny Preville*, 1996 WL 389266, at *10 (refusing to apply "knowledge of falsity" exclusion to bar defense for copyright claims which, like trademark claims, do not require knowledge or intent for liability);

*PG Ins. Co. of NY v. S.A. Mfg. Co., Inc.*, 674 N.Y.S.2d 199, 200 (App. Div. 1998) (insured in Lanham Act false advertising suit owed a defense because "knowledge of falsity" exclusion could not apply, since the insured "may be liable . . . without a showing of intentional or knowing conduct on its part . . . . Whether [the insured] engaged in intentional or knowing conduct is relevant on the issue of damages only and not liability.").

If the *Five Four* lawsuit establishes CGSI's liability based on actual "knowledge," one of these exclusions might bar Charter Oak's duty to indemnify CGSI for a damage award.  But until then there remains only a "potential" for such findings – and also the "potential" that such findings will never be made.   That potential, triggering Charter Oak's duty to defend, simultaneously bars it from asserting such exclusions to deny a defense.[95]

### 3.   The *Five Four* Complaint Does Not Allege Facts that Inevitably Bring Its Claims Within the "Unauthorized Use of Another's Name or Product" Exclusion

The "Unauthorized Use of Another's Name or Product" exclusion bars:

> "Personal injury", "advertising injury" or "web site injury" arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatag, or any other similar activities that mislead another's potential customers.[96]

Charter Oak cannot meet its burden of proving this exclusion might apply here (let alone that it must apply) because the *Five Four* Complaint accuses CGSI of infringing its marks on its jeans, not in its "e-mail address, domain name or metatag."   Although Five Four's Complaint may be read to accuse CGSI of "mislead[ing] [Five Four's] potential customers," it does **not** allege that CGSI allegedly solely, necessarily and inescapably did so by means "similar" to the purely computer-based acts that the exclusion specifies.

The mere remote possibility that Charter Oak might contort those allegations to possibly implicate excluded conduct does not suffice to establish that such conduct is necessarily alleged.  Rather, the possibility that CGSI is alleged to be "misleading" such customers by other "activities" beyond the exclusion's scope means it cannot bar a defense.  New York courts have refused to deny a defense based on the "knowing violation" exclusion when knowing or willful misconduct is not a necessary element of the underlying defamation or disparagement claim.[97]

---

[95] *Penny Preville*, 1996 WL 389266, at *10, citing *City of Johnstown, N.Y. v. Bankers Standard Ins. Co.*, 877 F.2d 1146, 1149 (2d Cir. (N.Y.) 1989) (" 'A court applying New York law . . . should only excuse an insurer from its duty to defend if it can be concluded as a matter of law that there is no possible factual or legal basis on which the insurer might eventually be held to indemnify the insured.' ").

[96] Braun Decl., ¶ 4, **Exhibit "1,"** Web Xtend Liability Endorsement, p. 2 of 5.

[97] *Park Place Entertainment Corp. v. Transcontinental Ins. Co.*, No. 01 CV 6546(ELC), 2003 WL

New York courts, like those of other states,[98] would also likely apply the same logic to bar these "knowledge"-based exclusions to trademark infringement claims that, like defamation claims, do not include knowledge of falsity or knowing violation of another's rights as necessary elements.

If Charter Oak wanted to specifically include the "unauthorized use of its 'name' on a product" as an additional basis for exclusion, it could have done so.  But it did not and the Court cannot now properly add words of limitation to the policy for which the parties did not bargain.[99] That is particularly true since the Court must narrowly construe exclusions like this against operative effect.[100]

### 4. The *Five Four* Complaint Does Not Allege Facts that Bring Its Claims Within the "Criminal Acts" Exclusion

The Charter Oak policy's "Criminal Acts" exclusion bars coverage for:

> "Personal injury", "advertising injury" or "web site injury" arising out of a criminal act committed by or with the consent of the

---

1913709, at *5 (S.D.N.Y. April 18, 2003) (J. Carter) (In defamation suit by one gaming industry competitor against another, "Knowledge of Falsity" exclusion did not bar defense because even though underlying plaintiffs alleged deliberate, knowing defamation, "they need not prove intent or knowledge to prevail on a claim of defamation" because New York law recognizes both defamation *per se* and "where only gross irresponsibility need be shown.").

*Simply Lite Food Corp. v. Aetna Cas. & Sur. Co. of Am.*, 666 N.Y.S.2d 714, 715 (App. Div. 1997) ("Knowledge of Falsity" exclusion did not bar defense to action based on insured's letter disparaging plaintiff's products where suit was brought under New York law claims "which do not require proof of intentional or even reckless conduct . . . .").

*Berman*, 671 N.Y.S.2d at 624 ("Knowledge of Falsity" exclusion did not bar defense to defamation action where "the jury was not required to find . . . that the statement [the insured] . . . made . . . was with knowledge of its falsity.").

[98]*Ohio Cas. Ins. Co. v. Cloud Nine, LLC*, 464 F. Supp. 2d 1161, 1168-69 (D. Utah 2006) ("Knowing Violation of Rights of Another" and "Knowledge of Falsity" exclusions did not bar defense to trademark infringement suit owed under policy's "advertising injury" coverage provisions, because elements of trademark infringement (15 U.S.C. § 1114(1)) and false designation of origin (15 U.S.C. §1114(1)) "do not necessarily require that, in order to find liability, the defendant [insured] have knowledge of falsity or knowledge that its conduct would cause advertising injury.").

[99]*Safeco Ins. Co. of Am. v. Robert S.*, 28 P.3d 889, 893 (Cal. 2001), refusing to extend inartfully drafted "illegal act" exclusion to encompass all "criminal acts":  "[W]e cannot read into the policy what Safeco has omitted.  To do so would violate the fundamental principle that in interpreting contracts, including insurance contracts, courts are not to insert what has been omitted."

[100]*Gillette Co.*, 476 N.E.2d at 276 (ruling product disparagement and trademark infringement claims did not "solely and entirely" fall within false advertising exclusion:  "[Exclusions] are not to be extended by interpretation or implication, but are to be accorded a strict and narrow construction.").

insured.[101]

This exclusion does not apply because the *Five Four* Complaint does not accuse CGSI or any other defendant of committing a crime, nor does it allege that a "criminal act"[102] was committed with CGSI's "consent."   The exclusion cannot apply here because the acts of intellectual property infringement and unfair competition with which Five Four charges CGSI do not necessarily and inevitably encompass or implicate criminal conduct.   No such criminal conduct is pled.[103]   Even if criminal sanctions were available for the conduct Five Four alleged, this fact would not preclude a defense.[104]

## VII.   CONCLUSION

Charter Oak owed and has breached its duty to defend CGSI in the *Five Four* lawsuit. **First**, CGSI has met its burden of proving the *Five Four* Complaint alleges facts that potentially trigger the policy's distinct covered "advertising injury" offenses of "infringement of slogan" and "infringement of title."   Charter Oak has not met its burden of proving that there is no possibility of coverage "in all possible worlds."   **Second**, Charter Oak cannot meet its burden of proving with certainty that any asserted exclusion can bar a defense.   Rather, two of them (the

---

[101]Braun Decl., ¶ 4, **Exhibit "1,"** Web Xtend Liability Endorsement, p. 2 of 5.

[102]The Charter Oak policy does not define "criminal act."

[103]*DiBartolo*, 618 N.Y.S.2d at 828 (refusing to apply criminal acts exclusion where insured was not charged with crime in connection with underlying counterclaimant's assault on insured and insured's criminal activity was not inevitably implicated);

*LensCrafters, Inc. v. Liberty Mut.l Fire Ins. Co.*, No. C 04-1001 SBA, 2005 WL 146896, at *11-13 (N.D. Cal. Jan. 20, 2005) (Criminal acts exclusion does not bar defense for privacy invasion claim when underlying civil complaint did not charge insured with criminal conduct, and insured's liability could be established without proving criminal conduct.).

[104]*Poof Toy Prods., Inc. v. United States Fid. & Guar. Co.*, 891 F. Supp. 1228, 1236-37 (E.D. Mich. 1995) (holding that trademark infringement, like copyright infringement, may or may not involve willfulness; thus, it is not reasonable to believe trademark or trade dress infringements are subject to exclusions for the willful violation of a penal statute);

*Ethicon, Inc. v. Aetna Cas. & Sur. Co.*, 737 F. Supp. 1320, 1334 n.14 (S.D.N.Y. 1990) (J. Leisure) ("[The insurer] also argues that the antitrust laws are penal in nature and thus a violation of those laws implies a willful violation of such a penal statute, which cannot be indemnified.   While it is true that criminal sanctions are available under portions of the antitrust laws, the [underlying] action was purely civil, was filed under the civil penalty provisions of the antitrust laws, and thus cannot be considered penal in nature.").

"Criminal Acts" and "Unauthorized Use" exclusions) are inapplicable by any stretch of the imagination; the other three (the "First Publication," "Knowing Violation" and "Knowledge of Falsity" exclusions) may possibly bar indemnity, depending on the case outcome, but cannot bar a defense.

CGSI has met its burden of proving there is a potential for "advertising injury" coverage under the "infringement of title" or the "infringement of slogan" offenses based on Five Four's allegations.  Charter Oak cannot meet its burden of proving there is no possibility of coverage or that any timely and adequately raised exclusions necessarily and inevitably bar a defense.  The Court should rule that Charter Oak owes and has breached its duty to defend CGSI in the *Five Four* lawsuit.

Dated:  August 9, 2010

  /s/ David A. Gauntlett

David A. Gauntlett *[Pro Hac Vice]*
Andrew M. Sussman *[Pro Hac Vice]*
GAUNTLETT & ASSOCIATES
18400 Von Karman, Suite 300
Irvine, CA  92612
Telephone:  (949) 553-1010
Facsimile:  (949) 553-2050
info@gauntlettlaw.com
ams@gauntlettlaw.com

**LOCAL COUNSEL:**

Eugene Killian, Jr. (EK 9972)
THE KILLIAN FIRM, P.C.
14 Wall Street, 20th Floor
New York, NY 10005
Telephone:  (212) 618-1409
Facsimile:  (212) 618-1705
      *-and-*
555 Route 1 South, Suite 430
Iselin, NJ  08830
Telephone:  (732) 912-2100
Facsimile:   (732) 912-2101
ekillian@tkfpc.com

Attorneys for Plaintiff
CGS Industries, Inc.

## CERTIFICATE OF SERVICE

I hereby certify that on August 9, 2010, the foregoing document was filed with the Clerk of the Court and served in accordance with the Federal Rules of Civil Procedure, and/or the Eastern District's Local Rules, and/or the Eastern District's Rules on Electronic Service upon the following parties and participants:

Lawrence A. Levy (LAL 3182)
Celeste M. Butera (CB 5659)
RIVKIN RADLER LLP
926 RXR Plaza
Uniondale, NY 11556-0926
Telephone:  (516) 357-3000
Facsimile:  (516) 357-3333
larrylevy@rivkin.com
celeste.butera@rivkin.com

Attorneys for Defendant
The Charter Oak Fire Insurance Company

   /s/ David A. Gauntlett         

David A. Gauntlett *[Pro Hac Vice]*
Andrew M. Sussman *[Pro Hac Vice]*
GAUNTLETT & ASSOCIATES
18400 Von Karman, Suite 300
Irvine, California  92612
Telephone:  (949) 553-1010
Facsimile:  (949) 553-2050
info@gauntlettlaw.com
ams@gauntlettlaw.com

**LOCAL COUNSEL:**

Eugene Killian, Jr. (EK 9972)
THE KILLIAN FIRM, P.C.
14 Wall Street, 20th Floor
New York, NY 10005
Telephone:  (212) 618-1409
Facsimile:  (212) 618-1705
     *-and-*
555 Route 1 South, Suite 430
Iselin, NJ  08830
Telephone:  (732) 912-2100
Facsimile:  (732) 912-2101
ekillian@tkfpc.com

Attorneys for Plaintiff
CGS Industries, Inc.