FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ NOV 16 2010 ★

BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

CGS INDUSTRIES, INC.

    Plaintiff,

– against –

THE CHARTER OAK FIRE
INSURANCE COMPANY,

    Defendant.

MEMORANDUM &
ORDER

10-CV-3186



JACK B. WEINSTEIN, Senior United States District Judge:

I. Introduction ........................................................................................................... 2

II. Facts and Procedural History .............................................................................. 2

   A. Web Xtend Liability Policy ............................................................................ 2

   B. Five-Four Suit ................................................................................................. 3

   C. Instant Proceedings ........................................................................................ 5

III. Contentions of the Parties, Law, and Application to Facts ............................. 5

   A. Motions for Partial Summary Judgment ..................................................... 5

      1. Contentions of the Parties ........................................................................ 5

      2. Standard ..................................................................................................... 6

      3. Law and Application to Facts .................................................................. 7

         a. Interpretation of Insurance Policies ................................................... 7

         b. Infringement of "Slogan" or "Title" ................................................. 8

         c. "In the course of" Advertising .......................................................... 11

         d. Exclusions ............................................................................................ 12

            i. Knowledge of Falsity ..................................................................... 12

1



  **ii. First Publication Exclusion**............................................................13

**IV. Conclusion**..............................................................................................14

## I. Introduction

CGS Industries, Inc. ("CGSI") brings suit against The Charter Oak Fire Insurance Company ("Charter Oak") for breach of contract for its failure to defend CGSI in an underlying litigation. It is alleged that Charter Oak breached its contractual duties by failing to defend CGSI in a trademark suit brought by Five Four Clothing, Inc. and FiveFour Group LLC (collectively, "Five Four") in the United States District Court for the Central District of California ("Five Four Litigation"). Sought are declaratory relief stating that Charter Oak has a duty to defend CGSI in the Five Four Litigation and pay its attorneys' fees and costs, damages resulting from this alleged breach of contract, and costs of this suit.

CGSI moved for partial summary judgment as to Charter Oak's duty to defend. *See* Fed. R. Civ. P. 56; D.E. No. 10. Charter Oak moved for judgment on the pleadings and opposed CGSI's motion. *See* Fed R. Civ. P. 12(c); D.E. Nos. 21, 26. By court order, Charter Oak's motion for judgment on the pleadings was converted to one for summary judgment. Order, Oct. 13, 2010, D.E. No. 36. For the reasons set forth below, CGSI's motion for partial summary judgment is granted and Charter Oak's cross-motion for summary judgment is denied.

## II. Facts and Procedural History

### A. Web Xtend Liability Policy

Defendant Charter Oak issued a commercial general liability policy to CGSI for August 31, 2009 through August 31, 2010. *See* Am. Compl. at ¶ 6, Ex. 1; Def.'s Mem. of

2

Law in Support for its Mot. for Judg. on the Pleadings ("Def.'s Mem.") at 4. Included in the policy is an endorsement titled "Web Xtend Liability – New York." *See* Decl. of Leonard M. Braun in Supp. of Pl.'s Mot. for Summ. Judg. as to Liab. on Def.'s Duty to Defend ("Braun Decl."), Ex. 1 at CG F2 10 03 05, p.1. This endorsement ("Web Xtend Policy") obligates Charter Oak, in relevant part, to pay damages of "'advertising injury,' caused by an offense committed in the course of advertising [CGSI's] goods, products or services." *Id.* "Advertising injury," in turn, is defined in the Web Xtend Policy as "injury, arising out of . . . [i]nfringement of copyright, title or slogan . . . ." *Id.* at p.4.

The Web Xtend Policy is subject to a number of exclusions. As relevant to the instant suit, they are (1) an exclusion for advertising injury "caused by or at the direction of [CGSI] with the knowledge that the act would violate the rights of another and would inflict" such injury; and (2) advertising injury "arising out of oral, written or electronic publication of material whose first publication took place before the beginning of the policy period." *Id.* at p.1-2.

**B. Five-Four Suit**

On December 23, 2009, Five Four filed a complaint against Wal-Mart Stores, Inc. ("Wal-Mart") for trademark and trade dress infringement relating to Five Four's trademarks and trade dress. *See* Braun Decl., Ex. 2. On March 24, 2010, Five Four filed its second amended complaint, adding CGSI as a defendant. *See id.*, Ex. 4. On July 18, 2010, a third amended complaint ("Five Four Complaint") was filed alleging eight claims, entitled "Federal Trademark Counterfeiting," "Federal Trademark Infringement," "Federal False Designations of Origin and False Descriptions," "Trade Dress Infringement," "False Advertising," "Common Law Trademark Infringement and Unfair

Competition," "State Statutory Unfair Competition," and "Constructive Trust." *See id.*, Ex. 12 ("Five Four Compl.") at 6-10.

Five Four alleged that Wal-Mart and CGSI, among others, "have counterfeited and/or infringed [its] trademarks by advertising, distributing, selling and/or offering for sale unauthorized goods including without limitation apparel bearing unauthorized reproductions of [its] trademarks." *Id.* at ¶ 29. These trademarks allegedly "embod[y] the spirit of modern culture," and through "longstanding use, advertising and registration, . . . have achieved a high degree of consumer recognition." *Id.* at ¶¶ 13, 17. They are purportedly "highly recognized by the public and serve to identify the source of the goods as from Five Four." *Id.* at ¶ 20.

Throughout Five Four's second amended complaint, various allegations concerning the defendants' state of mind were made. *See, e.g., id.*, Ex. 4 at ¶ 43 ("Defendants' acts are deliberate and intended to confuse the public . . . ."); *id.* at ¶ 67 ("Defendants' unlawful acts . . . were intended to capitalize on Plaintiffs' goodwill for Defendants' own pecuniary gain."); *see id.*, Ex. 6 at ¶ 69 ("Defendants' acts are willful, deliberate, and intended to confuse the public and to injure Plaintiffs.").

After CGSI informed Charter Oak of the Five Four Litigation, Charter Oak denied CGSI's request for a defense on February 18, 2010. *See* Declaration of Bruce A. McDonald ("McDonald Decl."), Ex. 6. CGSI informed Charter Oak of Five Four's second and third amended complaints, and Charter Oak maintained it had no duty to defend, claiming that there was no alleged "advertising injury" and that several policy exclusions might apply. *See id.*, Exs. 7, 8, 10; Braun Decl. at ¶ 15.

### C. Instant Proceedings

CGSI commenced the instant proceeding on July 13, 2010. *See* Compl. for (1) Declaratory Judgment, (2) Breach of Contract; D.E. No. 1. Sought are a declaratory judgment stating that Charter Oak has a duty to defend CGSI in the Five Four Litigation and pay its costs, and damages resulting from Charter Oak's alleged breach of the Web Xtend Policy. *See* Am. Compl. at ¶¶ 54, 58. CGSI also seeks to recover its costs and attorneys' fees of the instant proceedings. *Id.*, Prayer for Relief, at ¶ 4. After filing an amended complaint on August 4, 2010, CGSI moved for partial summary judgment. *See* D.E. Nos. 10-16. On August 31, 2010, Charter Oak answered the complaint and moved for judgment on the pleadings pursuant to Rule 12(c). *See* D.E. Nos. 20, 21, 26. After Charter Oak moved to stay CGSI's summary judgment motion until after its motion was decided, on October 12, 2010, it was ordered that all motions were to be treated as cross-motions for summary judgment. *See* Fed. R. Civ. P. 12(d); D.E. No.36.

### III. Contentions of the Parties, Law, and Application to Facts

#### A. Motions for Partial Summary Judgment

##### 1. Contentions of the Parties

Charter Oak moves for summary judgment, arguing that the Five Four Complaint does not allege an infringement of "slogan" or "title," as used in the Web Xtend Policy. Def.'s Mem. at 1. This failure, defendant argues, implies that the Web Xtend Policy does not apply. *Id.* Charter Oak also contends that the Web Xtend Policy's exclusion for "knowing[ly] violat[ing] [the] rights of another," *see* Am. Compl., Ex. 1, Part 3 at 1, applies since the Five Four Complaint alleges willful conduct. *See* Def.'s Mem. at 21.

Finally, it is maintained that the CGI's allegedly improper conduct occurred prior to the policy period. *Id.* at 25.

CGSI argues that the factual allegations underlying the Five Four Complaint trigger the Web Xtend Policy. It is contended that CGSI's alleged infringement of Five Four's trademark constitutes "infringement of title" and "infringement of slogan." Pl.'s Mot. for Summ. Judg. at 1-2. The Policy's exclusions, it is also argued, cannot free Charter Oak from its duty to defend because there is a potential for coverage. CGSI maintains that it is still entitled to a defense even though the facts, as decided in the Five Four Litigation, may ultimately bar indemnity. *Id.* at 2.

## 2. Standard

Summary judgment is appropriate if "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986); *Powell v. Nat'l Bd. of Med. Exam'rs*, 364 F.3d 79, 84 (2d Cir. 2004). Dismissal is warranted when after construing the evidence in the light most favorable to the non-moving party and drawing all reasonable inferences in its favor, there is no genuine issue as to any material fact. Fed. R. Civ. P. 56(c); *see Anderson*, 477 U.S. at 247-50, 255; *Sledge v. Kooi*, 556 F.3d 137, 140 (2d Cir. 2009).

The burden rests on the moving party to demonstrate the absence of a genuine issue of material fact. *Celotex v. Catrett*, 477 U.S. 317, 323 (1986); *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995). If the moving party appears to meet this burden, the opposing party must produce evidence that raises a material question of fact to defeat the motion. *See* Fed. R. Civ. P. 56(e). "Mere conclusory

allegations, speculation, or conjecture" will not suffice. *Cifarelli v. Village of Babylon*, 93 F.3d 47, 51 (2d Cir. 1996); *see also Delaware & Hudson Ry. v. Consolidated Rail Corp.*, 902 F.2d 174, 178 (2d Cir. 1990).

### 3. Law and Application to Facts

#### a. Interpretation of Insurance Policies

Under New York law, an insurer's duty to defend is "'exceedingly broad' and an insurer will be called upon to provide a defense whenever the allegations of the [underlying] complaint 'suggest . . . a reasonable possibility of coverage.'" *Automobile Ins. Co. of Hartford v. Cook*, 7 N.Y.3d 131, 137 (2006) (citation omitted). This duty to defend, which is broader than its duty to indemnify, remains "no matter how groundless, false or baseless the [underlying] suit may be." *Id.*; *see Village of Brewster v. Virginia Sur. Co., Inc.*, 896 N.Y.S. 2d 203, 206 (3d Dep't 2010) ("[I]f the complaint contains any facts or allegations that bring the claim even potentially within the embrace of the policy, the insurer must defend its insured . . . ."); *see also Mass. Bay Ins. Co. v. Penny Preville, Inc.*, No. 95 Civ. 4845 (RPP), 1996 WL 389266, at *4 (S.D.N.Y. July 10, 1996) ("The insurer's duty to defend the entire action is triggered even if only one claim is potentially covered by the insurance policy."). If there is a doubt as to whether a claim falls within the insurer's duty to indemnify, "the insurer is generally required to furnish a defense, leaving the issue of indemnification to be settled after establishment of the insured's liability." *Village of Sylvan Beach, NY v. Travelers Indem. Co.*, 55 F.3d 114, 115 (2d Cir. 1995). Yet "ambiguity does not exist 'simply because the parties urge different interpretations.'" *Hugo Boss Fashions, Inc. v. Federal Ins. Co.*, 252 F.3d 608, 616 (2d Cir. 2001) (citation omitted).

7

If an insurer seeks to disclaim coverage on the basis of an exclusion in the policy, two important rules apply. First, "exclusions are subject to strict construction and must be read narrowly." *Automobile*, 7 N.Y.3d at 138. Second, "the insurer will be required to provide a defense unless it can demonstrate that the allegations of the complaint cast that pleading solely and entirely within the policy exclusions, and, further, that the allegations, *in toto*, are subject to no other interpretation." *Id.* (internal quotation marks and citation omitted).

### b. Infringement of "Slogan" or "Title"

In order to fall within the Web Xtend Policy's coverage, the Five Four Litigation must allege "infringement of copyright, title or slogan." *See* Braun Decl., Ex. 1 at CG F2 10 03 05, p.4. If a relevant term is not defined in the policy, it is to be afforded its ordinary meaning, which may include its usage in federal law; any ambiguity must be resolved in favor of the insured. *See Hugo Boss*, 252 F.3d at 618; *New York v. Blank*, 27 F.3d 783, 792 (2d Cir. 1994).

Since "title" is not defined in the Web Xtend Policy, and no New York court has authoritatively determined its scope, in addition to its use in federal law, use of a dictionary is instructive. *See id*; *Hugo Boss*, 252 F.3d at 618 ("[T]he parties *may* be read as having incorporated established meanings and definitions forged in the relevant federal cases." (emphasis added)). "Title" is defined as: "A mark, style or designation; a distinctive appellation; the name by which anything is known." BLACK'S LAW DICTIONARY 1485 (6th ed. 1990); *see also Svensson v. Securian Life Ins. Co.*, 706 F. Supp. 2d 521, 525-26 (S.D.N.Y. 2010).

8

Here, CGSI's alleged conduct, as set out in the Five Four Complaint, might reasonably allege "infringement of . . . title" or "slogan." Five Four specifically alleges that its marks are "non-functional, inherently distinctive, and serve[] to identify Five Four as the source of the product." *See* Five Four Compl. at ¶ 25. They are allegedly "highly recognized by the public" and "have achieved a high degree of consumer recognition." *Id.* at ¶¶ 17, 20. CGSI's alleged misuse of these marks reasonably constitutes "infringement of . . . title" since it sought to exploit Five Four's "distinctive appellation." *See Energex Sys. Corp. v. Fireman's Fund Ins. Co.*, No. 96 Civ. 5993 (JSM), 1997 WL 358007, at *4 (S.D.N.Y. June 25, 1997) ("While an injury defined as an 'infringement of title' may not cover all trademark infringement claims, the language clearly suggests coverage of claims where there are allegations of infringing a company's mark or slogan."); *J.A. Brundage Plumbing & Roto-Rooter, Inc. v. Mass. Bay Ins. Co.*, 818 F. Supp. 553, 559 (W.D.N.Y. 1993), *vacated pursuant to settlement*, 153 F.R.D. 36 (W.D.N.Y. 1994) ("Clearly, then, infringement of 'title' can include trademark or tradename infringement."); *see also Acuity v. Bagadia*, 310 Wis.2d 197, 215 (2008) ("[W]e conclude that the 'infringement of title' provision . . . encompasses claims of trademark infringement."). Construing "title" to only encompass literary or artistic works, as Charter Oak urges, is unduly restrictive given New York's rule of insurance policy construction. *See Automobile*, 7 N.Y.3d at 138. Charter Oak could easily have drafted a policy which clarified that "title" only refers to literary or artistic works, as other insurance policies do. *See Hosel & Anderson, Inc. v. ZV II, Inc.*, No 00 Civ. 6957 (LAK), 2001 WL 392229, at *2 (S.D.N.Y. Mar. 21, 2001) (interpreting policy that

defines "Advertising Injury" to include "[i]nfringement of copyright, slogan, or title of any literary or artistic work").

Charter Oak's reliance on *Hugo Boss*, 252 F.3d 608 (2d Cir. 2001), is unpersuasive. There, the Court of Appeals for the Second Circuit interpreted the phrase "trademarked slogan." *Id.* at 618. It held that this phrase "appl[ied] only to words or phrases used to *promote* particular products or product lines," not the product name itself. *Id.* at 620 (emphasis in original).

Here, by contrast, the relevant policy language is "infringement of . . . title, or slogan." *See* Braun Decl., Ex. 1 at CG F2 10 03 05, p.4. The word "trademarked," which suggests the parties in *Hugo Boss* may have intended to incorporate federal intellectual property law, is absent. Moreover, the Five Four marks are not solely product names as was the case in *Hugo Boss*. CGSI's alleged misconduct "misrepresent[ed] the nature, characteristics, and qualities" of the offending goods, not just their product names. *Id.* at ¶ 86. The Five Four marks do more than simply display the words "Five Four." The marks include symbols and styles that, according to the Five Four Complaint, help "embody the spirit of modern culture." *See* Five Four Compl. at ¶¶ 13, 17, 19, 20, 25. These symbols may therefore reasonably constitute "slogans."

Finally, the *Hugo Boss* court held that given the "legal uncertainty" governing the meaning of "trademarked slogan," the insurer still had a duty to defend the suit. *Hugo Boss*, 252 F.3d at 622-23 ("[T]he question of whether Federal might be held liable to indemnify Hugo Boss was in doubt. And, given this doubt, Federal's failure to provide a defense for Hugo Boss in the infringement suit was a violation of its contractual duties.").

The duty to defend, not the ultimate duty to indemnify, is the subject of CGSI's motion. Given this "legal uncertainty," *see id.* at 623, and New York's policy to construe ambiguous insurance provisions in favor of the insured, *see Automobile*, 7 N.Y.3d at 137, Charter Oak must fulfill its contractual duties and defend CGSI in the Five Four Litigation.

### c. "In the course of" Advertising

"With respect to 'advertising injury,' New York law requires that 'to trigger [an insured's] duty to defend, the claimed injury must . . . arise out of an offense occurring in the course of the insured's advertising activities . . . .'" *Elite Brands, Inc. v. Penn. Gen. Ins. Co.*, 164 Fed. App'x 60, 61 (2d Cir. 2006) (citation omitted). "[T]he causation issue is not whether the advertisement can be the cause of the creation of the infringing product; the issue, under the terms of the policy, is whether there has been 'advertising injury' that was 'caused by an offense committed in the course of advertising' the insured products." *R.C. Bigelow, Inc. v. Liberty Mut. Ins.Co.*, 287 F.3d 242, 248 (2d Cir. 2002).

The Five Four Complaint alleges that CGSI's misconduct was "in the course of" advertising. It is contended that CGSI and others "infringed [Five Four's] trademarks by advertising" among other means. *See* Five Four Compl. at ¶ 29; *see also id.* at ¶¶ 31, 32, 38, 39, 49, 52, 62, 76 (specifically alleging misconduct including "advertising"). Five Four claims that CGSI and others manufactured and advertised counterfeit products, causing "confusion and mistake in the minds of the purchasing public." *Id.* at ¶ 33. The alleged injury, construing the complaint liberally, arose out of an offense incurring "in the course" of advertising. *See Century 21, Inc. v. Diamond State Ins. Co.*, 442 F.3d 79, 83-84 (2d Cir. 2006) (finding that complaint's use of the word "marketed" sufficient to

trigger duty to defend); *Energex*, 1997 WL 358007, at *4 ("Although the word advertising was not used in the complaint, it is clear that the confusion which was created through [the insured's] communications with its customers took place through advertising."). Individual discovery documents from the underlying litigation do not establish with sufficient certainty that advertising is not at all implicated. The alleged sale of these goods at Wal-Mart stores, including any signs, tags, or other notifications to the public may reasonably constitute point-of-sale advertising.

### d. Exclusions

#### i. Knowledge of Falsity

Charter Oak also argues that the provision of the Web Xtend Policy that excludes conduct "caused by at or at the direction of [CGSI] with the knowledge that the act would violate the rights of another and would inflict" injury frees it from its duty to defend. *See* Braun Decl., Ex. 1 at CG F2 10 03 05, p.1; Def.'s Mem. at 21-23. It relies on Five Four's various allegations of CGSI's "intentional" conduct. *See, e.g.*, Five Four Compl. at 43, 67, 69.

Despite these allegations, at this stage of the Five Four Litigation it has not been determined with any ascertainable degree of probability whether or not CGSI's alleged misconduct was committed "with the knowledge that the act would violate the rights of another." For instance, Five Four has alleged a violation of Section 43(a) of the Lanham Act, *see* Five Four Compl. at ¶ 64, which does not require intentional misconduct. *See Mass. Bay Ins. Co. v. Penny Preville, Inc.*, No. 95 Civ. 4845 (RPP), 1996 WL 389266, at *11 (S.D.N.Y. July 10, 1996) ("Although the presence of intent is relevant to the imposition of punitive damages under [the Lanham] act, wrongful intent is not essential

12

to recovery under Section 43(a) of actual damages suffered."). CGSI may very well be found liable for an "advertising injury" without committing intentional misconduct. Since a defense obligation may be avoided "only where there is 'no possible factual or legal basis'" on which an insurer's duty to indemnify could apply, Charter Oak's argument fails. *See Century 21*, 442 F.3d at 82-83 (2d Cir. 2006) (*quoting Servidone Constr. Corp. v. Security Ins. Co. of Hartford*, 64 N.Y.2d 419 (1985)).

### ii. First Publication Exclusion

Charter Oak also claims that it has no duty to defend CGSI in the Five Four Litigation because the Web Xtend Policy excuses liability for "advertising injury arising out of . . . publication of material whose first publication took place before the beginning of the policy period." *See* Braun Decl., Ex. 1 at CG F2 10 03 05, p.2. It is argued that a declaration made in the Five Four Litigation by CGSI's Vice President, Richard Striar, establishes that the allegedly infringing trademark was published prior to the policy period. *See* Declaration of Celeste Butera, Attach. 1, Declaration of Richard Striar dated June 23, 2010 ("Striar Decl."). Striar attests that CGSI sold the allegedly infringing jeans to Wal-Mart between June and August of 2009, before the Web Xtend Policy's coverage period of August 31, 2009 to August 31, 2010. *See id.* at ¶¶ 30, 32. Charter Oak therefore argues that its duty to defend ended on June 23, 2010, when it was determined that the Web Xtend Policy did not apply.

Despite this isolated document, it has not yet been determined with any substantial degree of probability that the policy does not provide coverage. *See Century 21*, 442 F.3d at 84; *Servidone Constr. Corp. v. Security Ins. Co. of Hartford*, 64 N.Y.2d 419, 424 (1985). First, one declaration in a lawsuit cannot be said to resolve this factual

dispute "with certainty." *Cf. Century 21*, 442 F.3d at 84 ("[T]his is not to say an obligation to defend necessarily continues through resolution of the underlying claim."). Second, CGSI contends, and Charter Oak's counsel conceded at argument, that it held a nearly identical insurance policy issued by Charter Oak that covered August 31, 2008-August 31, 2009. *See* Braun Decl. at ¶ 3. Given this uncertainty, there is a "possible factual basis" upon which Charter Oak may be obligated to indemnify CGSI. Charter Oak must therefore defend CGSI until it is definitively resolved that the Web Xtend Policy does not apply.

**IV. Conclusion**

CGSI's motion for partial summary judgment is granted and Charter Oak's cross-motion for summary judgment is denied.

SO ORDERED.

Jack B. Weinstein
Senior United States District Judge

Date: November 10, 2010
Brooklyn, New York

14