FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ APR 20 2011 ★

BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

CGS INDUSTRIES, INC.

        Plaintiff,

– against –

THE CHARTER OAK FIRE
INSURANCE COMPANY,

        Defendant.

---

**MEMORANDUM &
ORDER**

10-CV-3186

**JACK B. WEINSTEIN, Senior United States District Judge:**

**Appearances:**

David A. Gauntlett, Gauntlett & Associates, Irvine, CA, for plaintiff CGS Industries, Inc.

Lawrence A. Levy & Celeste M. Butera, Rivkin Radler LLP, Uniondale, NY, for defendant The Charter Oak Fire Insurance Company.

I. Introduction ............................................................................................................ 2
II. Facts and Procedural Background ........................................................................ 3
   A. Web Xtend Liability Policy ............................................................................ 3
   B. Underlying Five-Four Litigation .................................................................... 4
   C. Charter Oak's Refusal to Defend CGS ........................................................... 5
   D. Instant Suit ...................................................................................................... 5
   E. Resolution of the Five Four Litigation in a Settlement wholly Paid by CGS .... 6
   F. supplier agreement between CGS and Wal-Mart ........................................... 7
   G. Motion for Partial Summary Judgment .......................................................... 7
III. Contentions of the Parties, Law, and Application to Facts ................................. 7
   A. Contentions of the Parties .............................................................................. 8
      1. Charter Oak ............................................................................................... 8
      2. CGS .......................................................................................................... 8
   B. Legal Standard ............................................................................................... 9
   C. Application of Law to the Facts ..................................................................... 9



1. Issues Presented ........................................................................................... 9
2. Coverage under the Insurance Agreement ................................................ 10
   a. Wal-Mart's Imputed Damages ............................................................... 11
   b. Wal-Mart's Defense Costs .................................................................... 15
IV. Conclusion ................................................................................................ 18

## I. Introduction

CGS Industries, Inc. ("CGS") sues The Charter Oak Fire Insurance Company ("Charter Oak") for (1) breach of contract for its failure to defend CGS in an underlying litigation; and (2) indemnification of CGS for damages covered under an insurance contract.

It is alleged that Charter Oak breached its insurance contractual duties by failing to defend CGS in a trademark suit brought by Five Four Clothing, Inc. and FiveFour Group LLC (collectively, "Five Four") against CGS and Wal-Mart Stores, Inc. ("Wal-Mart") in the United States District Court for the Central District of California ("Five Four litigation"). The complaint seeks declaratory relief holding that in the Five Four litigation Charter Oak: (1) had a duty to defend CGS; (2) pay CGS's attorney fees, costs, and damages (to itself and Wal-Mart); and the legal fees of Wal-Mart.

Plaintiff moved for partial summary judgment finding Charter Oak had a duty to defend CGS in the Five Four litigation. *See* Fed. R. Civ. P. 56; Docket Entry No. 10. On Nov. 16, 2010, the court granted CGS's motion for partial summary judgment as to Charter Oak's duty to defend. Docket Entry No. 46, 2010 U.S. Dist. LEXIS 120671 (E.D.N.Y., Nov. 15, 2010).

Charter Oak now moves for partial summary judgment seeking a declaration that CGS is not entitled to indemnification for: (1) Wal-Mart's imputed portion of a $250,000

settlement paid by CGS to resolve the Five Four litigation; or (2) defense costs, including attorney's fees, in the sum of $57,379.44 incurred by Wal-Mart in the Five Four litigation. *See* Fed. R. Civ. P. 56; Docket Entry No. 95.

On March 18, 2011, the court heard oral argument on this motion and denied it. Tr. of Or. Arg., p. 30:16-17; Docket Entry No. 108. Because the law on the subject is unclear and to some extent presents issues of first impression, the parties were permitted to submit further written argument.

Upon consideration of these submissions, Charter Oak's motion for partial summary judgment is denied in part. It has no obligation to reimburse CGS for Wal-Mart's fees and costs in the Five Four litigation; to that extent only Charter Oak's motion for partial summary judgment is granted.

## II. Facts and Procedural Background

### A. Web Xtend Liability Policy

Charter Oak issued a commercial general liability policy to CGS covering the period of August 31, 2009 through August 31, 2010. *See* Charter Oak's Local Rule 56.1 Statement in Supp. of Mot. for Summ. Judg., Docket Entry No. 96 ("Charter Statement"), ¶ 26; Decl. of Celeste M. Butera in Supp. of Charter Oak's Mot. for Summ. Judg., Docket Entry No. 98 ("Butera Decl."), Ex. 12. Included in the policy is an endorsement titled "Web Xtend Liability – New York." *See* Charter Statement, ¶ 27; Butera Decl. (Ex. 12). This endorsement ("Web Xtend Policy" or the "insurance agreement") obligates Charter Oak to pay damages of "'advertising injury,' caused by an offense committed in the course of advertising [CGS's] goods, products or services." Ex. 12, at form no. CG F2 10 03 05, p. 1. "Advertising injury" is defined in the Web Xtend Policy as "injury,

3

arising out of . . . [i]nfringement of copyright, title or slogan. . . ." Charter Statement, ¶¶ 29-30; Ex. 12, at form no. CG F2 10 03 05, p. 4.

The Web Xtend Policy is subject to several exclusions. As relevant to this motion, excluded is "Contractual Liability," "'advertising injury' . . . for which the insured assumed liability in a contract or agreement." (the "contractual liability exclusion"). Charter Statement, ¶ 31; Ex. 12, at form no. CG F2 10 03 05, p. 2.

The exclusion is subject to several exceptions; the relevant one reads: "This exclusion does not apply to: . . . 'advertising injury' . . . that the insured would have in the absence of contract or agreement." (the "exception"). *Id.*

**B. Underlying Five-Four Litigation**

On December 23, 2009, Five Four filed a complaint against Wal-Mart for trademark and trade dress infringement relating to Five Four's trademarks and trade dress. *See* Charter Statement, ¶ 1; Butera Decl., Ex 1. On March 24, 2010, Five Four filed its second amended complaint, adding CGS as a defendant. *See*, Butera Decl., Ex. 3 at p. 1. On July 18, 2010, a third amended complaint (the "Five Four Complaint") was filed alleging eight claims, entitled "Federal Trademark Counterfeiting," "Federal Trademark Infringement," "Federal False Designations of Origin and False Descriptions," "Trade Dress Infringement," "False Advertising," "Common Law Trademark Infringement and Unfair Competition," "State Statutory Unfair Competition," and "Constructive Trust." *See id.*, Ex. 5 ("Five Four Compl.") at 6-10.

Five Four alleged that Wal-Mart and CGS, among other things, "have counterfeited and/or infringed [its] trademarks by advertising, distributing, selling and/or offering for sale unauthorized goods including without limitation apparel bearing

4

unauthorized reproductions of [its] trademarks." Five Four Compl. at ¶ 29. These trademarks allegedly "embod[y] the spirit of modern culture," and through "longstanding use, advertising and registration, . . . have achieved a high degree of consumer recognition." *Id.* at ¶¶ 13, 17. They are purportedly "highly recognized by the public and serve to identify the source of the goods as from Five Four." *Id.* at ¶ 20.

CGS and Wal-Mart were jointly referred to as the "defendants" throughout the complaint. *See* Butera Decl., Ex 5. No separation was made between damages caused by Wal-Mart and those caused by CGS. *Id.* Nor did the complaint specifically allege that CGS and Wal-Mart were jointly and severally liable for the alleged damages.

### C. Charter Oak's Refusal to Defend CGS

After CGS informed Charter Oak of the Five Four litigation, Charter Oak denied CGS's requests for a defense. *See* Charter Statement, ¶¶ 2, 5, 8; Butera Decl., Exs. 2, 4, 6. Charter Oak maintained it had no duty to defend, claiming that there was no alleged "advertising injury" and that several policy exclusions applied, including the contractual liability exclusion. *Id.*

### D. Instant Suit

CGS commenced the instant suit on July 13, 2010. *See* Compl. for (1) Declaratory Judgment; and (2) Breach of Contract; Docket Entry No. 1. Sought were a declaratory judgment stating that Charter Oak has a duty to defend CGS in the Five Four litigation and to pay its costs and damages resulting from Charter Oak's alleged breach of the insurance contract. *See* Am. Compl. at ¶¶ 54, 58. CGS also sought to recover its costs and attorneys' fees in the instant proceedings. *Id.*, Prayer for Relief, at ¶ 4.

After filing an amended complaint on August 4, 2010, CGS moved for partial summary judgment contending Charter Oak had a duty to defend CGS in the Five Four litigation. *See* Docket Entry Nos. 10-16. On November 16, 2010 the Court granted CGS's motion for summary judgment on the duty to defend. It ruled that Charter Oak was obligated to defend CGS in connection with the Five Four litigation. Charter Statement, ¶ 11; Docket Entry No. 46, 2010 U.S. Dist. LEXIS 120671 (E.D.N.Y., Nov. 15, 2010).

Thereafter, CGS moved for summary judgment regarding the quantification of its damages in connection with Charter Oak's duty to defend. Docket Entry No. 49. On November 30, 2010, the Court denied the motion, holding that quantification of damages was an issue for trial. Docket Entry No. 56.

**E. Resolution of the Five Four Litigation in a Settlement wholly Paid by CGS**

On January 31, 2011, Charter Oak took the deposition of Leonard M. Braun, the Treasurer of CGS. Charter Statement, ¶ 16; Butera Decl., Ex 14. Braun testified that Wal-Mart demanded indemnification from CGS for the underlying litigation based upon a supplier agreement between Wal-Mart and CGS. Charter Statement, ¶ 17; Butera Decl., Ex 14, at p. 40.

Thereafter, settlement negotiations commenced in the Five Four litigation, with CGS making settlement offers on behalf of both CGS and Wal-Mart. Charter Statement, ¶ 18; Butera Decl., Ex 14, at pp. 64-65 and 85-86. Following mediation, a settlement in the total amount of $250,000 was paid by CGS to Five Four on behalf of both CGS and Wal-Mart. Charter Statement, ¶ 18; Butera Decl., Ex 14, at p. 133.

In the instant suit, CGS seeks to recover defense costs in the Five Four litigation, including attorney's fees, incurred by Wal-Mart, its co-defendant. CGS alleges it has incurred $57,379.44 in legal fees on behalf of Wal-Mart. Charter Statement, ¶ 13; Butera Decl., Ex. 10, at p. 17. CGS also seeks to recover the $250,000 settlement amount in the Five Four litigation. Charter Statement, ¶ 14; Butera Decl., Ex 10, at p. 14-16.

### F. supplier agreement between CGS and Wal-Mart

On December 22, 2008, CGS and Wal-Mart entered into a supplier agreement for the sale and delivery of merchandise by CGS to Wal-Mart (the "supplier agreement"). Charter Statement, ¶ 32; Butera Decl., Ex. 13. The supplier agreement includes a comprehensive indemnification provision providing, in relevant part:

> 14. **INDEMNIFICATION.** Supplier [CGS] shall protect, hold harmless and indemnify Company [Wal-Mart]... from and against any and all lawsuits, claims, demands, actions, liabilities, losses, damages, costs and expenses (including attorney's fees and court costs), regardless of the cause or alleged cause thereof, and regardless of whether such matters are groundless, fraudulent or false, arising out of any actual or alleged:
>
> (a) Misappropriation or infringement of any patent, trademark, trade dress, trade secret, copyright or other right relating to any merchandise..."

Charter Statement, ¶ 33; Butera Decl., Ex 13, § 14.

### G. Motion for Partial Summary Judgment

On February 14, 2011, Charter Oak moved for partial summary judgment, seeking a declaration that Charter Oak is *not* obligated to indemnify CGS for (1) Wal-Mart's defense costs in the Five Four litigation; and (2) the portion of the settlement imputed to Wal-Mart for its liability in the Five Four Litigation.

### III. Contentions of the Parties, Law, and Application to Facts

## A. Contentions of the Parties

### 1. Charter Oak

Charter Oak contends that the insurance agreement does not cover CGS's claim for reimbursement of Wal-Mart's defense costs in the Five Four litigation or the part of the settlement attributed to Wal-Mart's liability. The insurance agreement issued by Charter Oak to CGS contains a contractual liability exclusion that provides there is no coverage for advertising injury "for which the insured has assumed liability in a contract or agreement." Charter Oak maintains that CGS's claim for reimbursement of Wal-Mart's liability and defense costs arises solely from CGS's assumption of liability in connection with the indemnification provision in their supplier agreement. CGS is not, it concludes, obligated to pay for Wal-Mart's defense costs in the Five Four litigation, or for the portion of the settlement attributable to Wal-Mart's liability, based upon any legal basis other than its contract with its vendee, Wal-Mart.

### 2. CGS

CGS contends that the contractual liability exclusion does not apply in this case because of the exception for "damages that [CGS] would have had in the absence of contract." The exception bars the exclusion's effect because Wal-Mart sought and was entitled to defense and indemnification from CGS automatically, as a matter of law, and not just under the supplier agreement. Charter Oak's contention that it is entitled to allocate the settlement amount between sums paid to settle CGS's and Wal-Mart's liability and to reimburse CGS only for the sum paid to settle CGS's liability is wrong because: (1) allocation is not required or possible given the joint and several liability arising from CGS's sale of allegedly infringing products to Wal-Mart as alleged in the

8

Five Four complaint; and (2) the cases Charter Oak relies upon to establish allocation rights require a factual basis for the allocation; no such basis exists here.

**B. Legal Standard**

Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986); *Powell v. Nat'l Bd. of Med. Exam'rs*, 364 F.3d 79, 84 (2d Cir. 2004). Dismissal is warranted when after construing the evidence in the light most favorable to the non-moving party and drawing all reasonable inferences in its favor, there is no genuine issue as to any material fact. Fed. R. Civ. P. 56(a); *see Anderson*, 477 U.S. at 247-50, 255; *Sledge v. Kooi*, 556 F.3d 137, 140 (2d Cir. 2009).

The burden rests on the moving party to demonstrate the absence of a genuine dispute of any material fact. *Celotex v. Catrett*, 477 U.S. 317, 323 (1986); *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995). If the moving party appears to meet this burden, the opposing party must produce evidence that raises a material question of fact to defeat the motion. *See* Fed. R. Civ. P. 56(e). "Mere conclusory allegations, speculation, or conjecture" will not suffice. *Cifarelli v. Village of Babylon*, 93 F.3d 47, 51 (2d Cir. 1996); *see also Delaware & Hudson Ry. v. Consolidated Rail Corp.*, 902 F.2d 174, 178 (2d Cir. 1990).

**C. Application of Law to the Facts**

**1. Issues Presented**

Presented is the fundamental question whether the sums paid by CGS to or on behalf of Wal-Mart pursuant to the settlement agreement in the Five Four litigation are

9

covered by the insurance agreement. More specifically, it is whether the contractual exclusion applies; and if it does, whether the exception to the exclusion supports CGS's right to indemnification from Charter Oak.

The answer to this question depends on whether another legal rule, independent of contract liability under the supplier agreement, obligates CGS to indemnify Wal-Mart for damages and defense attributed to Wal-Mart. Put differently, assuming the supplier indemnification agreement between CGS and Wal-Mart did not exist, would CGS have had a duty under law to indemnify Wal-Mart for those damages? The answer to this question is examined separately with respect to (1) the relative portion of the damages in the Five Four litigation that Charter Oak seeks to impute to Wal-Mart ("Wal-Mart's imputed damages"); and (2) Wal-Mart's defense costs in the Five Four litigation ("Wal-Mart's defense costs").

## 2. Coverage under the Insurance Agreement

It is undisputed that the contractual liability exclusion applies to CGS's claims for reimbursement of the damages and costs incurred by Wal-Mart in the Five Four litigation. CGS concedes it "has assumed liability in contract or agreement," Under supplier agreement between CGS and Wal-Mart. CGS's Memo. of Law in Opp. of Charter Oak's Mot. for Summ. Judg. ("brief in opposition"), Docket Entry No. 103, at p. 2.

CGS bears the burden of establishing that an exception to the contractual liability exclusion applies. "[A]n insured must demonstrate that an exception to an exclusion applies where coverage rests on the application of such exception." *Monteleone v. Crow Constr. Co.*, 637 N.Y.S.2d 408, 411 (1st Dep't 1998); *see also Bedford Affiliates v.*

10

*Manheimer*, 86 F. Supp. 2d 67, 75 (E.D.N.Y. 1999). CGS must satisfy this burden with regard to each of its claims -- i.e. (1) Wal-Mart's imputed damages for its own trademark violations; and (2) Wal-Mart's defense costs. As explained below, CGS has satisfied its burden with respect to the former, but not with respect to the latter.

### a. Wal-Mart's Imputed Damages

The exception to the contractual liability exclusion applies to "'advertising injury' ... that the insured would have in the absence of contract or agreement." Charter Statement, ¶ 31; Butera Decl., Ex. 12, at form no. CG F2 10 03 05, p. 2. To satisfy the exception, CGS must show a duty to indemnify Wal-Mart under an independent source of law other than the supplier agreement obligation. CGS argues that its duty existed not primarily pursuant to the supplier agreement, but as a matter of common law and statutory law.

Five Four brought the underlying Five Four litigation against CGS and Wal-Mart, identifying them throughout the pleading as "Defendants;" accusing both, without distinguishing between them, of the same wrongdoing, and seeking damages jointly from both of them. CGS's liability to Wal-Mart was based on CGS's initial sale of the infringing merchandise to Wal-Mart. CGS's Local Rule 56.1 Statement in Opp. to Charter Oak's Mot. for Summ. Judg., Docket Entry No. 105, ¶¶ 4, 7 ("CGS Statement").

These facts, coupled with the facts pled in the Five Four complaint, suffice to charge CGS with a breach of warranty to Wal-Mart. Under New York law the buyer's (Wal-Mart's) remedies for breach of warranty include the right to obtain indemnification from the seller (CGS) of resulting economic loss. The relevant statute reads:

> Unless otherwise agreed, a seller that is a merchant regularly dealing in goods of the kind warrants that the

11

> goods shall be delivered *free of the rightful claim of any third person by way of infringement or the like* but a buyer that furnishes specifications to the seller must hold the seller harmless against any such claim that arises out of compliance with the specifications. N.Y. U.C.C. § 2-312(3) (Emphasis added)

Section 2-312(3) entitles the buyer of an infringing good to indemnification from the seller for any claims by a third party for infringement. *Johnson Elec. N. Am. Inc. v. Mabuchi Motor Am. Corp.*, 98 F. Supp. 2d 480, 489 (S.D.N.Y. 2000); *see also Dolori Fabrics, Inc. v. Limited, Inc.*, 662 F. Supp. 1347, 1358 (S.D.N.Y. 1987) (granting defendant-retailer's cross claim for indemnification from defendant-manufacturer for damages incurred by plaintiff-designer out of a breach of warranty by way of infringement under N.Y. U.C.C. § 2-312(3)).

In order to recover damages under section 2-312(3) the plaintiff-buyer must show that the seller (1) was a merchant regularly dealing in goods of the kind; (2) the goods were subject to a rightful infringement claim of any third party upon delivery; (3) the buyer did not furnish specifications to the seller; and (4) the parties did not form another agreement. *See Phoenix Solutions, Inc. v. Sony Elecs., Inc.* 637 F. Supp. 2d 683, 693 (N.D.Ca. 2009); *84 Lumber Co. v. MRK Technologies, Ltd.*, 145 F. Supp. 2d 675, 678-79 (W.D. Pa. 2001) (mentioning only the first three elements out the aforementioned four as required under § 2-312(3)).

There is no dispute the first three elements are satisfied in this case: (1) CGS is a merchant who regularly deals in goods of the kind of the infringed goods; (2) the goods were subject to a rightful infringement claim of Five Four; and (3) Wal-Mart did not furnish specifications of the goods to CGS. *See* CGS statement, ¶¶ 4, 7.

The fourth element -- the parties did not form another agreement -- is satisfied as well. Unpersuasive is Charter Oak's argument that the supplier agreement constitutes "another agreement" between CGS (the seller) and Wal-Mart (the buyer) which negates CGS's independent legal duty to indemnify Wal-Mart under section 2-312(3).

As Charter Oak concedes, section 2-312(3) exists to protect buyers against third-party infringement claims in case the contract between the seller and the buyer does not speak of this issue of infringement. *See* Charter Oak's Letter in Supp. of Mo. for Summ. Judg., Docket Entry No. 111, at p. 4. Every sale of goods is made by contract. But not all contracts impose warranty liability. Section 2-312(3) imposes such liability, as a matter of law, whenever the four elements stated above are met.

The forth element -- which requires that the parties did not form another agreement -- is articulated in the opening of section 2-312(3) as "[u]nless otherwise agreed." These words clarify that section 2-312(3) is a default rule which the parties are free to opt out of. It enables the parties to waive the default warranty liability which otherwise applies as a matter of law, whenever the other three elements are satisfied. Section 2-312(3) is reasonably construed to apply when a contract between the buyer and seller does not exclude warranty liability and the other three enumerated elements are satisfied.

The critical question is not what the supplier agreement provides with respect to CGS's duty to indemnify Wal-Mart. It is whether section 2-312(3) confers on Wal-Mart an independent legal right to indemnification from CGS. The contract between CGS and Wal-Mart is, for the purpose of this insurance agreement, a mere decorative counterpane over the blanket protection of the law -- section 2-312(3).

The cases Charter Oak relies upon to contradict this conclusion are not on the point. *CBS Inc. v. Ziff-Davis Publishing Co.*, 75 N.Y.2d 496, 503 (1990), stands for the proposition, which is not disputed by CGS, that a breach of warranty claim is grounded in contract. Section 2-312(3) applies to the sale from SCG to Wal-Mart providing indemnification whether or not there is an independent explicit warranty agreement.

In *Fantasia Accessories, Ltd. v. Northern Assurance Co. of America*, 2001 U.S. Dist. LEXIS 18865 (S.D.N.Y. 2001) the court held the insurers did not have a duty to indemnify the insured in the breach of statutory warranty action based upon patent infringement since that claim did not fit within the definition of advertising injury. The court also held that the exclusion for breach of contract claims in the insurance policy excluded the breach of statutory warranty claim since the breach of warranty claim did not exist without the breach of contract claim. Charter Oak does not argue for a breach of contract exclusion but contractual liability exclusion. *Hecht v. Component International, Inc.* 22 Misc 3d 360, 365 (Sup. Ct. 2007) does not control the meaning of the statutory warranty as well.

Because a duty of indemnification exists "in the absence of the [supplier agreement]," Charter Oak is obligated to pay damages for "injury," that arises "out of . . . [i]nfringement of copyright, title or slogan. . . ." Butera Decl., Ex. 12, at form no. CG F2 10 03 05, p. 4. The $250,000 amount paid by CGS was paid as compensation for such damages. *See* Memo. & order dated November 14, 2010, Docket Entry No. 46, at pp. 8-11, 2010 U.S. Dist. LEXIS 120671, at *10-17. Hence, the exception applies to this kind of damage, covered by the insurance agreement. Whether the sums paid in settlement was reasonable will be determined by trial.

### b. Wal-Mart's Defense Costs

CGS contends that Charter Oak has a duty under the insurance agreement to indemnify CGS for Wal-Mart's defense costs, including attorney's fees in the Five Four litigation. To bear its burden, CGS must show that: (1) the exception to the contractual liability exclusion applies to these damages -- namely that there was a source of law, other than the supplier agreement, obligating CGS to pay Wal-Mart's defense costs; and (2) that damages of this kind are covered by the insurance agreement. The question to be decided, then, is whether the exception to the contractual liability exclusion applies to this kind of litigation damage; namely, assuming the supplier agreement did not exist, was CGS obligated, as a matter of law, to indemnify Wal-Mart for defense costs it incurred.

CGS fails to provide convincing authority supporting its case. In *Lamborn v. Czarnikow-Rionda Comp.* 221 A.D. 737 (1st Dep't 1927), plaintiff-buyer brought suit under section 151 of the Sales of Goods Act against defendant-seller for damages incurred by defendant as a result of breach of warranty. Plaintiff sought to recover, as special damages, defense costs it has incurred from a suit brought by a third party who bought the goods and suffered damages. The court held that "[i]f it appears that the special damage claimed was fairly within the contemplation of the parties when the contract was entered into, there is no reason why [defense costs] should not be recovered." *Id*, at 738. *Lamborn* does not stand for the proposition that the defendant in a breach of warranty claim is entitled to defense costs as special damages whenever a contract is silent about this question. *Lamborn* merely held that plaintiff could plead that

a right for indemnification for defense costs was within the contemplation of the parties. *Id.*

As for statutory law, CGS relies on section 2-715(2)(b) of New York Uniform Commercial Code. It reads: "Consequential damages resulting from the seller's breach include . . . injury to person or property proximately resulting from any breach of warranty." No New York cases applying this provision to include defense costs of a third party -- here Wal-Mart's -- when the contract is silent on the issue, have been cited by the parties. There are a few cases in other jurisdictions supporting CGS's interpretation of section 2-715(2)(b), but the balance of authority is contra. *See, e.g.*, Note, David T. Schaefer, *Attorney's Fees for Consumers in Warranty Actions -- An Expanding Role of the U.C.C.?*, 61 Ind. L.J. 495, 498, n. 11 (1986) (virtually every court considering the question of whether the U.C.C. allows recovery of attorney's fees as incidental or consequential damages has denied recovery).

General policy supports rejection of CGS's position. There is a strong principle, peculiar to our jurisprudence against one party's paying for the legal costs of another, even when the other wins in a litigation. This presumption is "the American rule." "In the United States, the prevailing litigant is ordinarily not entitled to collect a reasonable attorneys' fee from the loser." *Alyeska Pipeline Serv. Co. v. Wilderness Society*, 421 U.S. 240, 247 (1975). "[A]n award of attorneys' fees may be authorized by agreement between the parties, statute or court rule. In the case of an agreement between the parties, the obligation to pay attorneys' fees must be unmistakably clear in the language of the contract." *Wuhan Airlines v. Air Alaska, Inc.*, 1999 U.S. Dist. LEXIS 5204, 5-6 (S.D.N.Y. 1999); *see also Bridgestone/Firestone Inc. v. Recovery Credit Services, Inc.*,

98 F.3d 13, 20-21 (2d Cir. 1996). "[A]ttorneys' fees may be included as damages where such an award is clearly implied from the language and purpose of the entire agreement and the surrounding facts and circumstances." *Bonnie & Co. Fashions, Inc. v. Bankers Trust Co.*, 955 F. Supp. 203, 218 (S.D.N.Y. 1997) (quotation marks and citations omitted).

"The New York approach to the interpretation of contracts of insurance is to give effect to the intent of the parties as expressed in the clear language of the contract." *Federal Insurance Company v. American Home Assurance Co.*, 2011 U.S. App. LEXIS 7057 (2d Cir. Apr. 7, 2011) (quoting *Mount Vernon Fire Ins. Co. v. Belize NY, Inc.*, 277 F.3d 232, 236 (2d Cir. 2002)) (internal quotation marks omitted). Here, there is no indication in any contractual language suggesting an intent to depart from the American rule.

The insured must pay for the buyer's litigation costs in contradiction of the general American rule since it has contracted to do so -- thus converting its lack of automatic obligation under law into a burden assumed by contract. *See, e.g.*, Mary Frances Drefner & Arthur D. Wolf, 1 Court Awarded Attorney Fees, ¶ 6.02 (1983).

It should be recognized that in the instant case the insured has made an appealing argument that the litigation burden of the buyer is assumed by the seller-insured's as a matter of sales law and through an implied warranty under law against unsatisfactory goods (including those causing the indirect damages of litigation expenses). *See*, Note, David T. Schaefer, *Attorney's Fees for Consumers in Warranty Actions -- An Expanding Role of the U.C.C.?*, 61 Ind. L.J. 495, 501-509 (1986). But, on balance, Charter Oak wins in this dispute because it has assumed a burden contrary to the American Rule only

to the limited degree that it has explicitly done so in the insurance agreement covering its own liability for litigation expenses.

Because the insurance agreement does not explicitly include coverage for defense costs as either consequential or incidental damages arising out of the insured's breach of warranty, the presumption of the American rule stands. Those damages of Wal-Mart for its legal fees in the underlying litigation are not covered by the insurance agreement. It is unnecessary to consider the issue of proximate cause since this case is controlled by an interpretation of an unambiguous insurance agreement and applicable sales law.

## IV. Conclusion

Charter Oak's motion for partial summary judgment is granted in part and denied in part as indicated above, without costs.

Trial is scheduled for May 3, 2011. The parties shall submit trial briefs and proposed findings of facts and law seven days before trial.

SO ORDERED.

Jack B. Weinstein
Senior United States District Judge

Date: April 15, 2011
Brooklyn, New York